# PRINCE, Adm'r, vs. BATES.

1. In a proceeding under the statute before the Orphans' Court, to compel the administrator of a deceased vendor to make title to land, which had been sold by the deceased, and for which he had executed his title-bond, the administrator is the only *indispensable* party defendant to the petition, and he may sue out a writ of error alone to reverse a decree rendered against him.

2. The fact that the deceased vendor assumed to sell the land and executed his bond for title raises the presumption of ownership in him, and the *onus* of showing an outstanding title is cast on the adverse party.

3. If the person holding the bond for title has sold a part of the land to a third person, the Orphans' Court is not thereby deprived of jurisdiction.

8

4. If the obligee of the bond transfers to his vendor the notes of a third person, to whom he has sold a part of land, and takes up his own notes, the vendor has a lien on that part of the land thus sold, for the payment of the notes transferred, which is not lost by his failure to fix the liability of the endorser by suit against the maker, and it is erroneous to decree that the administrator shall make title to the land until the notes thus transferred have been fully paid.

ERROR to the Probate Court of Marengo.

BROOKS & MANNING, for plaintiff:

1. The purchaser of land holding a bond for title must have paid all the purchase money before he is entitled to a decree directing the administrator to convey. If any portion of the purchase money remain unpaid the court will refuse the prayer for a conveyance.—Driver, adm'r, v. Hudspeth, 16 Ala. 350. In this case the only evidence of the payment of the purchase money offered by Bates, was the production of his original notes. But the administrator proved that Bates took up his original notes by giving to Fareinholt, the vendor, a note on one Posey, payable to Bates and by Bates endorsed to one Fareinholt, which said note remains unpaid. Ergo, the purchase money has not been all paid, and the vendee, Bates, is not entitled to his decree.

2. To entitle the vendee to a conveyance, he should have a perfect equity. In this case it appears that Bates, before filing his petition, had sold a part of the lands to Posey, (for which the above mentioned note was given;) therefore Posey's heirs, and not Bates, were and are entitled, upon the payment of the balance of the purchase money, to have that portion of the lands conveyed to them. But the court ordered the administrator to convey the entire tract to Bates.

3. The court of equity, and therefore the Orphans' Court, will not compel a vendor who has no title to convey. In this case objection that the vendor had no title was made in the court below, and no proof whatever of title in Fareinholt was made, excepting his parol admissions; which evidence is entirely insufficient.

HUNTINGTON, contra:

1. There was no proof that Fareinholt used statutory diligence to recover the notes of Posey, substituted for those of Bates and

Prince, adm'r, v. Bates.

endorsed by Bates when his own notes were given up.   In England the effect of taking a note under such circumstances, is, that the creditor cannot proceed for the original debt, without showing the use of due diligence to obtain payment of the substituted note, and notice to the party of its dishonor.—Bates v. Ryland, 6 Ala. 473, citing Story on Bills, 127, § 112.   In New York it is held, that the original debt is gone by the acceptance on account of it of a note on a third person endorsed by the debtor, so that no remedy whatever can be had, except upon the endorsement.—Frisbie v. Larned, 21 Wend. 452.   Such is clearly the law under our statute ; for, if the creditor by his own laches loses the right to sue upon the endorsement, it would defeat the statute to allow him to sue upon the original consideration.

2.  As to the point, that there was no sufficient proof that Fareinholt was the owner of the land, the decree recites that he was.   In addition, the bond for titles and the written admission made out a *prima facie* case which was not repelled by any countervailing proof whatever on the part of the plaintiff in error. The presumption of law is, that the title is in the vendor who gives a bond for title, and he can only resist a specific performance by showing affirmatively that the title is in somebody else. We were not bound to prove negatively that Fareinholt had not acted fraudulently in selling us the land.

3.  As to the heirs of Posey, they could not be made parties to this statutory proceeding, because they did not hold Fareinholt's bond for title.   The statute is only for the benefit of those who hold a decedent's bond for titles.   The practical operation is the same, for whenever Bates should get a deed from the administrator of his vendor, he would be a trustee for his own vendees, as to the portion sold them.

4.  As to the objection that no guardian *ad litem* was appointed for Mrs. Dew, (she and her husband being non-residents and made parties by publication,) a married woman has no separate existence in law, and if a guardian *ad litem* be necessary for her, where is the use of making her husband a party ?   The husband becomes the owner of his wife's property in the hands of her guardian immediately upon marriage, and if she die while the guardian has it, the husband can sue for and recover it.—Pitts v. Curtis, 4 Ala. 350.

5. The writ of error ought to be dismissed for want of proper parties. The infants by their guardian *ad litem* and Mr. and Mrs. Dew ought to have joined in suing out the writ of error. That the objection is good at this time, see Jamieson v. Colburn, 1 S. & P. 253; Billingslea v. Abercrombie, 2 ib. 24.

CHILTON, J.—1. We do not think this writ of error should be dismissed for want of proper parties, as in our opinion the proper parties are before the court. In applications of this kind, the statute seems to regard the administrator or executor of the deceased vendor as the only indispensable party defendant, though others interested could perhaps come in, propound their interest and be allowed also to defend. Nothing of this kind, however, occurred in the court below, and the case is properly represented in this court by the administrator against whom the decree was rendered, as the plaintiff in error.—Clay's Dig. 157, § 38. The motion to dismiss the writ must be overruled; for if the objection taken were well founded, this court would allow the writ to be amended under the act of 1843.—Clay's Dig. 312, § 39.

2. The statute enacts, " That when any person owning lands or tenements, shall sell the same, and enter into bond or obligation to make titles thereto, and shall depart this life without having made titles, in that case the person to whom such bond or obligation was given, his executors or administrators, may petition the Orphans' Court of the county, where probate of the will of such deceased person was taken, or letters of administration granted, to compel the executors or administrators to make titles, agreeably to the bond or obligation given by the decedent," &c. It then prescribes notice to be given by publication in some newspaper in the State once a month for at least three months, when the court may, if it find the said contract was fairly made, order the executor or administrator to make titles as such, to the lands, &c. We have recently held, (16 Ala. 348,) that in proceeding under this statute, the petition should disclose that the deceased was the owner of the land at the time of his death. No objection is taken in this case to the petition, which indeed appears to be very correctly drawn; but it is insisted that the parol declarations of the decedent, that he was the owner of the land, as set out in the bill of exceptions, were insufficient to show that he was

the owner. Be this as it may, we think the presumption of ownership is created by his assuming to sell the land and executing his bond for title, and the *onus* of showing an outstanding title was thus cast on the adverse party.—Samuels v. Finley, 7 Ala. 635.

3. Neither, in our opinion, would the fact that the person holding the bond for title had sold a portion of the land to a third party, deprive the Orphans' Court of jurisdiction. It is indispensable that he should procure a title himself, before he can comply with his engagement to convey a title to his vendee, and if he has paid in full for the land, so as to relieve it from all liens which the decedent could assert against it for the purchase money, and holds the title-bond for the latter, the administrator has no concern with the disposition which he intends to make, or has contracted to make of the title, after it shall have vested in him.

4. We are informed by the bill of exceptions in this case, that Bates having purchased the land from Fareinholt, took his title-bond and executed his notes for the purchase money ; that he afterwards sold a portion of the land to one Posey, and took Posey's notes, which he endorsed to Fareinholt, and took up his own notes, paying the balance in money ; Posey died and his estate was declared insolvent, and paid on final settlement only seventy per cent. to the creditors. The balance upon the notes of Posey remains unpaid. It is insisted that, inasmuch as it does not appear that Fareinholt prosecuted the maker of the note endorsed by Bates so as to fix a liability on Bates as endorser, that he must be discharged from the notes and the arrangement regarded as a complete payment, so far as Bates is concerned. However true this would be, as respects the notes of a party disconnected from the purchase of this land, we think it very clear in the case before us, that as the notes of Posey were given to Bates in consideration of the purchase of a portion of this land, Bates held a lien on the land thus sold for the payment of the purchase money. It is, further, a well settled rule of law, that where a party endorses and transfers a note secured by a lien, which is in the nature of an equitable mortgage, he transfers with it the lien for its security. In other words, the debt, which is the principal, being assigned, the lien, which is the incident, follows it into the hands of the assignee, and this lien is

not lost, although the endorsee or assignee may have lost his re-course as against the assigner or endorser.—Roper v. McCook & Robison, 7 Ala. 318. It is very clear that a court of equity would decree a sale of that portion of the land sold by Bates to Posey in satisfaction of the balance of the note of Posey, in vir-tue of the lien; and this being so, that no court should compel Farcinholt to part with his title to that portion until the demand, which constitutes a lien upon it, shall have been satisfied.

In Driver v. Hudspeth, 16 Ala. 348, we held that the vendee who sought title by this summary remedy must show that he has an equitable right to the land, freed from the lien of the ven-dor, before the Orphans' Court can properly decree title to be made by the personal representative. In this case, it is true, the decedent may have lost his lien which he originally had as against Bates, by losing his recourse upon his endorsement; but then Bates having sold and transferred the note to his vendor, the lat-ter is subrogated to the rights of Bates, and consequently still retains a lien on the portion of the land which Bates sold. Thus the case is brought within the influence of the decision of Driver v. Hudspeth.

It results from this view, that the Orphans' Court erred in decreeing that the administrator should convey before the re-mainder of the note on Posey was paid.

Let the decree be reversed, and the cause remanded.