(No. 7129.  October 6, 1943.)

BLAINE COUNTY CANAL COMPANY, a corporation, Appellant, v. R. G. MAYS, DUARD TERRY, et al., Respondents.

[142 Pac. (2d) 589.]

Rehearing denied November 15, 1943.

L. E. Glennon and J. H. Andersen for appellant.

John W. Jones for respondents.

AILSHIE, J.—This proceeding was commenced by appellant (whom we shall hereafter refer to as canal company) before the Commissioner of Reclamation, for transfer of water rights in Little Lost River and Sawmill Creek from lands known as the Knollin Ranch, to and upon certain described lands embraced within Blaine County, known as "Little Lost River Carey Act Project," providing an adequate supplemental water right for such lands. Respondents, R. G. Mays and Duard Terry, (and others) protested before the commissioner against such transfer. After a hearing, the Commissioner of Reclamation rendered his decision and entered an order, granting petition of the canal company, subject to such deductions in the volume of water as had theretofore been ordered by the District Court for Butte County, in the case involving the transfer of such water from the Knollin Ranch to the Blaine County Project. Respondents appealed to the District Court from the decision of the commissioner and at the same time filed a petition protesting against the transfer upon two principal grounds:

(1) That appellant canal company did not own or have any right, title or interest in the lands from which the water rights were sought to be transferred;

(2) That the transfer of the water would seriously and permanently work an injury and substantial damage to the respondents.

The case was heard on appeal November 12, 1942, and the court took the case under advisement and rendered its decision and judgment April 12, 1943, reversing the Commissioner of Reclamation and holding that the canal company had no title or right to the water rights or the lands to which they sought to apply such right. At the time of the trial, the trust company's title had not been perfected and the deed had not been delivered, nor had the purchase price been paid; but prior to the entry of judgment, April 12, 1943, title had been perfected, and the deed, executed November 5, 1942, had been delivered to the canal company and was presented to the court in support of a motion to reopen the case and permit the introduction of the deed in evidence. The court denied the motion and entered judgment for respondents, and his action thereon is assigned as error.

The question presented for consideration here is one of law, since there is no substantial conflict in the evidence.

The material facts and circumstances of the case are substantially as follows:

June 1, 1940, the First Trust Company of Saint Paul (hereinafter referred to as trust company), successor in interest of the Merchants Trust Company, St. Paul, and the Northwestern Trust Co., executed and delivered to appellant, the canal company, an option contract for the sale of the lands known as the Knollin Ranch and the water rights appurtenant thereto, being the water rights involved in this controversy. The option ran from its date (June 1, 1940) to and including June 1, 1942. The essential parts of the option are as follows:

"WITNESSETH: That for and in consideration of the sum of One Dollar ($1.00) and other good and valuable considerations, receipt whereof is hereby acknowledged, the party of the first part does by these presents give and grant unto the party of the second part, for a period of two years, ending upon the first day of June, 1942, the exclusive right and option to purchase those certain lots, pieces and parcels of land situated in the County of Butte, State of Idaho, described as follows, to-wit: [Description follows.]

"Together with all water and water rights appurtenant to said land, or any part thereof, as said rights were adjudicated in the case of *Blain... County Investment Company v. Robert G. Mays, et al,* by a decree of the District Court of the Sixth Judicial District of the State of Idaho, in and for Butte County. In connection with the water rights it is understood and agreed that the party of the first part will transfer to the party of the second part only such water and water rights as it owns and which are appurtenent to the herein described premises.

"The purchase price for said land and water rights shall be the sum of TWENTY-FIVE THOUSAND DOLLARS ($25,000.-00), which the said party of the second part agrees to pay to the party of the first part upon election to purchase, as herein provided.

"Upon final payment of the purchase price for said land and water rights herein described, said party of the first part agrees to make, execute and deliver to said party of the second part a warranty deed conveying said land and water rights to the party of the second part.

"Until the purchase price of $25,000.00 for the land and water rights herein described has been paid to the party of

the first part, the said party of the first part shall retain the right to lease said premises on such terms or conditions as to it seem advisable, and the landowner's share and any and all cash rents due under any and all leases shall be paid to the said party of the first part for its use, and the party of the second part shall have no interest therein. If possession is demanded by the party of the second part after a crop has been down the lessee under any such lease shall have the right to enter on the premises in due season for the purpose of cutting and harvesting said crop."

One years later (June 1, 1941) the trust company entered into an agreement with respondents, Duard Terry and Robert G. Mays, to sell to them the same tract of land and water rights described in the foregoing option. One thousand dollars was paid down and the balance was to be paid in annual instalments, the last of which would fall due December 1, 1950. The agreement to sell to respondents contained the following specifications and reservations:

"(This agreement is entered into subject to any and all existing rights under and by virtue of an option granted by the party of the first part, the seller, to the Blaine County Canal Company, an Idaho corporation, which agreement is dated the 1st day of June, 1940; the option contained therein expiring the 1st day of June, 1942. In the event the said Blaine County Canal Company exercises its option to purchase the said property this agreement shall be null and void, and the party of the first part, the seller, agrees to repay immediately to the parties of the second part, the purchasers, any amount which the said parties of the second part, the purchasers, may have paid to said party of the first part, the seller, to apply hereon.)"

It appears that some discussion by way of correspondence took place between Mr. Glennon, as president of the canal company, and the trust company, with reference to the sufficiency of title to the land and water rights. March 14, 1942, Glennon wrote the trust company as follows:

"March 14, 1942.
Re: Knollin property

First Trust Company of St. Paul,
Mr. P. E. Thayer, Secretary,
First National Bank Building,
St. Paul, Minnesota.
Gentlemen:
In order to clear up any confusion which possibly may

have arisen out of our recent correspondence, I am writing to advise you that the Blaine County Canal Company hereby unconditionally accepts your offer and exercises its option to purchase the property above referred to, in accordance with the terms and conditions of that certain option to purchase executed by you as of June 1, 1940. The full purchase price of $25,000.00 will be paid not later than May 31, 1942, upon tender of properly executed conveyance of the land and water rights described in said option, with abstract of title showing a good and marketable title thereto.

Yours very truly,
L. E. GLENNON, President,
Blaine County Canal Co., Ltd.

LEG;eb
CC—Mr. Lorin Lewis, Burley, Idaho."

Two days later (March 16, 1942) the trust company's secretary wrote Glennon, as follows:

"Saint Paul,
March 16th, 1942.

Mr. L. E. Glennon, President,
Blaine County Canal Company, Ltd.,
Pocatello, Idaho
Dear Sir:

Re. Option Dated June 1, 1940 to Buy
Certain Lands and Water Rights Known as
the KNOLLIN-WOODS Property

"We are today in receipt of your letter of the fourteenth in which we are advised that the Blaine County Canal Company has unconditionally accepted our offer for the sale of certain property in Butte County, Idaho known to us as the Knollin-Woods Ranch together with water rights and that you have exercised your option to purchase this property under a certain agreement dated June 1, 1940.

"On July 23, 1941 we sent the abstracts to this property to our Mr. Lorin Lewis of Burley, Idaho and they have not been returned. We will appreciate it if you will write to him concerning them.

Very truly yours,
s/s P. E. Thayer
Secretary.

T/D"

Thereafter, November 7, 1942, the trust company's assistant secretary wrote Mr. Glennon as follows:

> "Saint Paul
> November 7, 1942

Mr. L. E. Glennon,
Attorney at Law
Pocatello, Idaho
Dear Mr. Glennon:

Re: Martin Woods Farm

"We have received your letter of October 29th in which you advised us that the Title Examiner for the Intermountain Title Insurance Company is willing to pass the title provided we get a quit claim deed from Mr. and Mrs. Knollin. Our Idaho representative has been instructed to get this deed and we hope to receive it from him soon. When it comes to hand we shall send it to you for examination and subsequent recording.

We are enclosing a copy of the deed by which the First Trust Company of Saint Paul State Bank will convey the fee and water rights to the Blaine County Canal Company, Limited when the consideration has been paid.

The continued abstract of title should indicate that certificates evidencing the change of name from Merchants Trust and Savings Bank to Merchants Trust Company, Saint Paul, and the consolidation of Merchants Trust Company, Saint Paul and Northwestern Trust Company into First Trust Company of Saint Paul and the subsequent change of name of First Trust Company of Saint Paul to First Trust Company of Saint Paul State Bank are of record in Butte County.

The attorney evidently examined the foreclosure proceedings which ended in the Sheriff's Deed recorded in Book 2 of Deeds, on page 344. In this deed title is conveyed by the Sheriff to First Trust Company of Saint Paul.

We should like to have a copy of the attorney's opinion if one is available. If you will send this to us it will be much appreciated.

Yours very truly,

/s/ E. J. Olson
Assistant Secretary

EJO:G
Enc."

It will be noted that, in the trust company's letter of March 16th, it is understood and admitted that the Canal Company had exercised its option to purchase this property "under a certain agreement dated June 1, 1940." The letter further proceeds: "we sent the abstracts to this property to our Mr. Lorin Lewis of Burley, Idaho and they have not been returned." The writer of the letter then requested Mr. Glennon to "write to him [Lewis] concerning them." No question was raised or suggested by the trust company that the acceptance was not in due form or within the proper time. The trust company's letter of November 7th recognized the necessity for having "a quit claim deed from Mr. and Mrs. Knollin" and stated:

"Our Idaho representative has been instructed to get this deed and we hope to receive it from him soon . . . .

"We are enclosing a copy of the deed by which the First Trust Company of Saint Paul State Bank *will convey the fee* and water rights to the Blaine County Canal Company, Limited when the consideration has been paid." (Italics inserted.)

This letter discloses, throughout, the recognition of the defects in title and necessity for completing the title before consummating the deal and payment of purchase price.

The judgment of the trial court, reversing the commissioner, appears to have turned on the following findings:

"That the protestants and appellants, R. G. Mays and Duard Terry, upon signing the said contract on June 1st, 1941, entered in possession of said property, and have made or tendered all payments provided for in said contract as the same became due, and have done and performed all things undertaken and required by them by the terms of said contract, and are now asserting and claiming to be the owners of said property and the whole thereof, subject to the payments of the balance of the purchase price therein specified.

"That the respondent, Blaine County Canal Company, did not, before the first day of June, 1942, or at all up to the time of the trial of this action, pay or offer to pay, or tender to the Merchants Trust Company of St. Paul, Minnesota, the purchase price of Twenty-five Thousand ($25,000.-00) Dollars specified in said option, to be paid in cash upon the election to purchase said property.

"That the protestants and appellants, R. G. Mays and Duard Terry, were at the time of the trial herein by reason of the contract referred to in Finding No. IV hereof the beneficial owners of the water and water rights and real property described in paragraph two of the findings herein."

These findings appear to be predicated on the theory that, since the canal company did not actually make payment of $25,000 to the trust company *on or before June 1, 1942,* it lost all of its rights under the option; and that the beneficial interest to the property immediately vested in respondents.

It is urged and insisted by respondents, that the canal company only conditionally complied with the terms of the option, and that it added a new condition in requiring an "abstract of title showing a good and marketable title thereto."

■ Stipulation to furnish a "warranty deed" is in law the equivalent of a promise to convey a marketable title. (*Boyd v. Boley,* 25 Ida. 584, 586, 139 P. 139; *Bell v. Stadler,* 31 Ida. 568, 572, 174 P. 129; see *Larson v. Thomas,* 57 A.L.R. 1246 and notes, 1268.)

In *Boyd v. Boley,* supra, we said:

"It would have been like purchasing a lawsuit for respondent to have gone ahead and made his final payments and taken a deed to the land under such circumstances. The law does not require a purchaser to take such risks. The man who contracts to give a 'good and sufficient warranty deed' to a tract of land ought to be required to clear up all such matters as these before claiming the final payment of the purchase price for the land under contract."

Again in *Bell v. Stadler,* supra, it was said: "An agreement to convey in fee simple, free and clear of all encumbrances, implies the assurance of a marketable title." Both of the foregoing cases were approved and followed by this court in *Marshall v. Gilster,* 34 Ida. 420, 426, 201 P. 711.

In note to *Larson v. Thomas,* supra, the annotator at pages 1246, 1268, 1271, says:

"It is not assumed that the vendee agrees to accept a defective title, but, in the absence of an express stipulation otherwise, it is assumed that he agrees to buy all the premises described by clear and unmistakable boundaries, and, by implication of law, this means—in an executory contract, at least—a good title to the whole thereof, free and clear

from encumbrances. Although the contract is silent upon the subject, the law raises the implication, and the law is part of the writing. Stated more fully, the law imputes to the vendor a covenant that he will convey a marketable title, or, according to many of the decisions, a good title, unless the vendee stipulates to accept something else."

(Citing many cases including the foregoing cases from Idaho.)

■ It is argued, however, that, as a matter of fact, there was never any acceptance of this option, because of the circumstance that the purchase price ($25,000) was not paid *within* the two-year period allowed by the option. That contention is not tenable for several reasons: In the first place, the letter of March 14, 1942, from the president of the canal company to the trust company stated that the "company hereby unconditionally accepts your offer and exercises its option to purchase." That acceptance was treated and acted upon by both parties as an *unconditional* acceptance of the option; and an action could have been maintained by the trust company against the canal company, for the purchase price upon tendering a good, marketable title. It further notified the vendor that the purchase price would be paid within the time specified in the option. It was admitted, however, by the vendor (the optioner) that it was not prepared to furnish a marketable title within that time. The canal company was not required to pay over to the trust company $25,000 for a defective, clouded or doubtful title.

■ It appears that the purchase price was paid as soon as the trust company cleared its title and tendered a deed in conformity with the terms of the option. The circumstance, that the canal company required an abstract of title showing a good and marketable title to the property, does not obviate the unconditional acceptance of the offer, (a) for the reason that no objection was made by the trust company to furnishing an abstract; and (b) because it is of no concern to respondents, whether the vendor furnished and paid for an abstract or not, because it did not cost respondents anything for it to do so nor prejudice them in any way.

■ Another thing appears very distinctly in this case and merits consideration. Respondents were notified by the terms of their agreement, that this option was outstanding

and that the agreement to sell to them at the same time was only conditional. There is no privity of contract between appellant and respondents. If the trust company breached its contract with respondents in any respect, that is another question and one which could not be litigated in this case.

Respondents contend that "The optionor was obligated by its contract to treat Terry and Mays in good faith, and, if the appellant did not purchase the property as provided in the option, it was its duty to do nothing to enlarge or extend the terms of the option which in law had then expired." The fatal answer to that contention is, that the optionor, the trust company, was not, and is not, in court. Therefore, the relative rights and responsibilities of respondents and the trust company, as contracting parties between themselves, was not at issue in this case. The canal company was not a party to that contract and owed no duty to respondents.

The sole question to be determined here is: Was the canal company entitled to a warranty deed of conveyance showing marketable title, and did it pay the purchase price when furnished such a conveyance? The answer to that question must necessarily be in the affirmative.

Respondents were in no position to urge lapse of time as against the canal company, the vendee. Under the facts and circumstances of this case, the canal company could have maintained an action for specific performance against the trust company, had it declined to furnish a deed showing marketable title.

The judgment of the District Court is reversed and the cause is remanded with direction to the trial court to make findings of fact, conclusions of law, and enter judgment in accordance with the views herein expressed. Costs to appellant.

Holden, C.J., Budge, Givens, and Dunlap, JJ., concur.