L. WARD HATHAWAY, Respondent, v. JOHN V. NEVITT and E. M. NEVITT, Appellants.—No. 40628.—213 S. W. (2d) 938.

Division One, July 12, 1948.

Rehearing Denied, October 11, 1948.

*R. P. Smith* for appellants.

*Jack O. Knehans* for respondent.

204

[938] BRADLEY, C.—Action by the optionee to enforce specific performance of an option to purchase 24 acres of land in Cape Girardeau County; title to the land was in defendants (husband and wife), the optionors, by the entirety. The option was in a 5 year lease on the 24 acres given plaintiff by defendants on April 8, 1944. The answer was, in effect, a general denial and a counterclaim for damages for an alleged breach of the lease by subrenting in violation of the terms. For such breach defendants alleged that the lease was forfeited and asked for $1,000 damages for the breach and also asked for possession of the premises. The trial court found for plaintiff and directed specific performance by defendants of the option; defendants appealed.

Plaintiff and defendant John V. Nevitt are veterinarians. Prior to April 8, 1944, defendants held title by the entirety to 27 acres of land in a single tract adjacent to and lying on the east side of highway 61 near the city of Cape Girardeau. Since the trial of this cause, so it is stated, the tract has been taken into the city. On said date defendants sold and conveyed to plaintiff and his wife by warranty deed 3 acres of the 27 acre tract and some personal property valued at $3,010. As part payment of the purchase price plaintiff and [939] his wife executed to defendants a note for $5,000, payable in installments of $75 per month beginning June 1, 1944. This note was secured by a deed of trust on the 3 acres and on the personal property sold. Also, on April 8th, defendants, for a consideration of $10 per month, executed the lease mentioned. As stated, the lease contained the option upon which plaintiff relies, which option clause is as follows: "And the said parties of the first part (defendants)

make the following reservations, to wit: Reserving the right to sell said property at any time and thus cancel this lease, but hereby grants to the said party of the second part (plaintiff) an option to purchase said property for $7500 before it is sold to anyone else.''

The Bowman Brothers Realty Company prepared the deed to and a deed of trust on the 3 acre tract and the personal property to secure the $5,000 note, and said company also prepared the lease. Upon closing the sale of the 3 acres, the personal property, and execution of the lease defendants told W. O. Bowman of the Bowman Company that they wanted to sell the remaining 24 acres and directed him to find a purchaser. Shortly after the sale of the 3 acres, the personal property and the execution of the lease, defendants moved away; settled in North Hollywood, California, and plaintiff moved onto the 3 acre tract and took possession of the 24 acres covered by the lease which became effective May 1, 1944. Nothing further occurred for nearly two years; no buyer was found for the 24 acres and plaintiff said nothing about electing to take the option. Plaintiff made payments to defendants on the installment note and on the lease at the First National Bank in Cape Girardeau. The payments were made by check to defendant Dr. Nevitt. February 4, 1946, Dr. Nevitt, from North Hollywood, wrote W. O. Bowman as follows: ''Now as to the 24 acres which I own on Hy 66 (61) for which you are sole sales agent. When I left Cape two years ago this coming April I gave to Dr. Hathaway a 5 year lease on it with option to purchase at any time for $7500. His lease is also cancellable if I get an offer for it and he does not meet the offer. That clause is in the lease. . . . I can see from what goes on here that the 24 acres is a real site for a short air strip for helios and small slow planes. I think it is the longest and straightest piece of land close in to the city there is, touching city limits. SEE WHAT YOU CAN GET DONE IN WAY OF SELLING IT (caps in original). You might tell Dr. Hathaway you have several lookers, etc. and ask him what his top offer would be and how much down he would pay, etc. You might also phone Sir Naters, S. E. Missourian (newspaper); give him my address with a 3 year subscription and tell him to send me the bill. Last time I tried to subscribe, there was a paper shortage and I got turned down.''

March 16, 1946, Bowman wrote defendant Dr. Nevitt; acknowledged receipt of the letter of February 4th, etc., and further, as follows: ''We are still trying to sell your property on highway 61, and I am going out and see Dr. Hathaway real soon and find out if I can't get him to take up his option and buy this property. However, we have had a few inquiries this spring in regard to this piece of land, and the city is talking about extending William Street on out to the highway and this would go through your piece of ground. We have sold about everything in town and are now selling all of

Rodney Vista just north of the new fairground for building sites. . . . I ordered the Southeast Missourian paper for you. They said they would put your subscription down for a year. . . ."

There was no reply to the Bowman letter of March 16th. The next thing that occurred was the execution by plaintiff of a written acceptance of the option to purchase the 24 acres. The written acceptance was signed by plaintiff himself and by W. O. Bowman for defendant Dr. Nevitt. It was not signed for nor by Mrs. Nevitt. The written acceptance of the option is as follows:

"Cape Girardeau, Missouri
August 5th, 1946

"I, the undersigned L. Ward Hathaway, of Cape Girardeau, Missouri, hereby purchase exercise offer (option) to purchase under date of April 4, 1944 (date was April [940] 8th) for $7500 from the owner the following described real estate situated in Cape Girardeau County, Missouri, to wit: Being property described in lease dated April 8th, 1944, not recorded, made by John V. Nevitt & E. M. Nevitt with Dr. L. Ward Hathaway upon the following terms and conditions: Deed to be taken in the name of L. Ward Hathaway & E. Christine Hathaway, purchase price $7500.00; earnest money down payment, $500.00; balance of $7,000.00 to be paid in the following manner: Cash when deed & abstract is delivered, approved by my attorney on or before September 1, 1946. I will pay taxes falling due in the year 1947 and thereafter; owner will pay taxes falling due in the year 1946 and all prior years. . . ."

On the same day of the acceptance of the option W. O. Bowman wrote defendant Dr. Nevitt as follows: "Dr. Hathaway is buying the rest of your property, taking up his option of $7500.00. I have been trying to get him to do this for some time and I got other people so hot on buying it that he sent for his father out East and he (Dr. Hathaway) came in today and signed up a contract to buy and put up a $500.00 deposit. We were wondering where the abstract is? If you have it out there I wish you would please send it to us at once or if it is in Cape Girardeau, please tell us where it is so we can get hold of it. Just as soon as I get the abstract and get a description of the property, we will send the deed out for you and Mrs. Nevitt to sign, so I wish you would attend to this at once."

August 30, 1946, defendant Dr. Nevitt wrote W. O. Bowman: "Upon my return today from a fishing trip up north, I find your letter and two wires relative to the Hathaway offer. Since writing you on February 4th, a lot of water has gone under the bridge and upon investigation it seems that Dr. Hathaway has a lease which prevents me from selling the land until his lease expires (lease does not so prevent), but which does not carry an option to him unless I should choose to sell. Since reading the Cape papers on the matter

I have decided to withdraw the land from the market until the Hathaway lease has expired, unless I can buy his remaining lease privileges which expires I believe May 1, 1949. You might write me what he will take for his lease, and then I would be in a position to immediately deed land to the city for the proposed roads, etc. and the balance of the land could be developed into a restricted subdivision."

On same day (August 30th) that Dr. Nevitt wrote Bowman that he was withdrawing the land from the market, etc., Dr. Hathaway paid the balance due on the installment note given as a part of the purchase price of the 3 acres and the personal property. This payment, like the installments theretofore paid, was made at the First National Bank. So far as appears the next thing that occurred was on April 30, 1947, when this cause was filed, and service had on both defendants in Cape Girardeau County. The inference is that defendants had gone to Cape Girardeau to see about the property and that the suit was filed and service obtained while they were there. Defendants were not present at the trial and did not testify by deposition.

It will be noted that in the letter of August 30, 1946, to Bowman, Dr. Nevitt said that the lease does not carry an option to plaintiff to buy "unless I choose to sell." Assuming that such construction is correct, still such will not help defendants, because they did *choose* to sell and such was their choice from the very day of the execution of the lease which contained the option, and in the letter of February 4th to Bowman, the choice to sell the land was emphasized by capping the sentence, "See what you can get done in way of selling it", and in this same letter it was suggested that Bowman do a bit of fast stepping by telling plaintiff that he (Bowman) had "several lookers"—prospective purchasers of the land. And before the *choice* to sell was withdrawn plaintiff had elected in writing to avail himself of the option to purchase and paid $500.00 to the agent in whose hands the land was placed by defendants for sale, and the agent who was urged to see plaintiff to get him to act on the option.

Sec. 3354 R. S. 1939, Mo. R. S. A. Sec. 3354, among other things, provides that "no contract for the sale of lands made by an [941] agent shall be binding upon the principal, unless such agent is authorized in writing to make said contract." Defendants invoke this provision of the statute of frauds and say that defendants are not bound by the instrument of August 5, 1946, the written acceptance of the option. That instrument is not a *contract* by an agent to sell a principal's land; it is no more than a written acceptance of the option, and Bowman's function was no more than the agent of defendants to receive on their behalf the acceptance of the option,

and this he was, in effect, authorized to do for Dr. Nevitt by the letter of February 4th and by both defendants on April 8, 1944.

The payment of the stipulated rent in the lease was the consideration for the option. Tebeau *v. Ridge, 261 Mo. 547, 170 S. W. 871, l. c. 874, L. R. A. 1915C 367; Chapman v. Breeze et al., 355 Mo. 873, 198 S. W. (2d) 717, l. c. 719; Rockhill Tennis Club of Kansas City v. Volker et al., 331 Mo. 947, 56 S. W. (2d) 9, l. c. 17. "An option is a complete bilateral contract with mutuality of obligation upon the optionee's election to accept the option. Until the optionee so elects there is no enforcible contract, the option being in effect but an offer, although an offer binding on the optionor until the time stipulated for the election has expired by virtue of the consideration paid for the option." Chapman case, supra. There can be no argument that the election of plaintiff to take the option is not binding on defendants. Both defendants signed the lease which contained the option, that is, the offer to sell to plaintiff. It was not necessary for them to sign the acceptance. When plaintiff, the optionee, executed the written acceptance, then the acceptance and the option constituted a completed contract of sale. 3 Thompson On Real Property (Per. Ed.), Sec. 1332; 32 Am. Jur., Sec. 299, p. 278. A blank sales contract in the Bowman office was used, it would seem, for the written acceptance of the option, but that did not make the instrument itself a contract to sell. Quite a bit of the record and the briefs are on the question as to whether Dr. Nevitt acted for his wife in matters pertaining to the sale of the 24 acres. All that was unnecessary. Mrs. Nevitt signed the lease which contained the option; she chose to sell as did Dr. Nevitt, and this choice was not withdrawn until plaintiff, the optionee, accepted the option.

The judgment should be affirmed, and it is so ordered. *Dalton* and *Van Osdol, CC.*, concur.

PER CURIAM:—The foregoing opinion by BRADLEY, C., is adopted as the opinion of the court. All the judges concur.