Richard W. STRINGER and Mary Frances Stringer, Plaintiffs-Respondents,

v.

Wilford REED and Bernice Reed, Defendants-Appellants.

No. 9976.

Missouri Court of Appeals, Springfield District.

Nov. 16, 1976.

William E. Gladden, Houston, for defendants-appellants.

John Alpers, Jr., Cabool, Tom Rosenberg, Willow Springs, for plaintiffs-respondents.

Before STONE, P. J., and HOGAN and FLANIGAN, JJ.

**FLANIGAN, Judge.**

This is an action for specific performance of a contract for the purchase of a 260-acre tract of land in Texas County, Missouri. Plaintiffs Richard W. Stringer and Mary Frances Stringer, husband and wife, are the buyers and defendants Wilford V. Reed and Bernice Reed are the sellers.

The petition sought, alternatively, that defendants be directed to convey the title to plaintiffs or that the court decree title to be in plaintiffs, upon payment of the purchase price.

On April 4, 1969, plaintiffs and defendants executed a written agreement entitled "Farm Lease" and referred to in the record as Exhibit A. In that document plaintiffs are referred to as lessees and defendants as lessors. Plaintiffs base the action upon their alleged exercise of and compliance with an option to purchase contained in paragraph 5 of Exhibit A. Paragraph 5 reads:

"It is mutually agreed that LESSORS hereby give to LESSEES, their heirs and assigns the exclusive right to purchase the above described property upon the terms and conditions hereinafter set out on March 15, 1974, upon giving LESSORS thirty days notice in writing prior to March 15, 1974, of their intent to exercise this option:

(a) The purchase price shall be the sum of $13,000.00 to be paid to LESSORS in cash upon delivery of a warranty deed conveying said property to the LESSEES conveying marketable title in said premises to LESSEES free and clear of all liens and encumbrances.

(b) General taxes on said property should be prorated as of the date of delivery of the deed and possession of said premises shall transfer from LESSORS to LESSEES on the date of the delivery of the deed."

Defendants' answer [1] admitted execution of Exhibit A but set up several grounds allegedly constituting justification for their refusal to convey the title to plaintiffs. Each ground will be considered in connection with the treatment of that point on appeal to which it is applicable.

The trial court found in favor of plaintiffs and entered its decree vesting title in plaintiffs upon payment of the purchase price and proration of the taxes. Defendants appeal.

Appellate review of this non-jury action is governed by Rule 73.01, V.A.M.R., as construed in *Murphy v. Carron,* 536 S.W.2d 30 (Mo. banc 1976). The decree of the trial court must be sustained "unless there is no substantial evidence to support it, unless it is against the weight of the evidence, unless it erroneously declares the law, or unless it erroneously applies the law. Appellate courts should exercise the power to set aside a decree or judgment on the ground that it is 'against the weight of the evidence' with caution and with a firm belief that the decree or judgment is wrong." *Murphy,* at p. 32. Neither side invoked Rule 73.01 to request findings of fact and the trial court made none. That being the situation, "all fact issues upon which no specific findings are made shall be considered as having been found in accordance with the result reached." Rule 73.01.

On April 1, 1969, plaintiff Richard Stringer went to the home of the defendants and discussed with them the matter of leasing the land. The next day Stringer went to his attorney John Alpers and told him "what we had agreed to" and asked Alpers to "draw up the contract." On April 4, 1969, the two plaintiffs and the two defendants met with Alpers in the latter's office.

Defendant Wilford Reed stated he did not read Exhibit A. Defendant Bernice Reed did not recall whether or not she read it. Both of them admitted, however, that Alpers read it to them. All four of the parties signed Exhibit A and each couple received a copy.

The lease, Exhibit A, had a five-year term commencing on March 15, 1969, and ending on March 14, 1974, and required plaintiffs to pay an annual rental of $200.

---

1. Defendants also filed a counterclaim for damages. The trial court denied defendants relief on the counterclaim. Neither side attacks that result.

It contained no provision in regard to improvements. Defendant Wilford claimed that the verbal agreement was that the plaintiffs were to fertilize and improve the pasture and sow grass and, because of this, the defendants were to give the plaintiffs "the first chance to buy the land at the price of $50 per acre" if defendants decided to sell it during the five-year period.

Paragraph 3 of Exhibit A, as originally drafted, read as follows: "The Lessors covenant and agree: This lease essentially is an option to purchase with Lessee in possession during the option period. The rent for the entire period is paid in advance in a lump sum, against which is charged a fixed monthly rental, any balance being applied on the purchase price on exercise of the option."

During the conference in Attorney Alpers' office on April 4, 1969, at the insistence of *defendants,* the last sentence of paragraph 3 was deleted. Plaintiff Stringer testified, with respect to the deletion, that it was the only item that was discussed with the defendants on April 4 "that was different" from what he had discussed with them at their home on April 1.

On January 4, 1974, the plaintiffs sent to defendants a letter admittedly received by them a few days later. That letter informed defendants that it constituted notice of plaintiffs' intention to exercise the option to purchase the land described in Exhibit A and made specific reference to the option contained in paragraph 5. The letter contained a request that the defendants send plaintiffs the abstract "so that we might have it extended to date and approve title before the closing of this sale and purchase on March 15, 1974." The letter concluded with: "Should you have any questions concerning this notice please feel free to contact us."

After receiving the January 4, 1974 letter, defendants went to plaintiffs' home and told plaintiffs that defendants did not understand the notice. According to defendant Bernice, plaintiff Stringer said "they were going to exercise the option and asked for a deed." When Stringer made that statement Bernice, according to her, responded to him "that I thought we were through since the five years rental was up."[2]

On March 4, 1974, Attorney William E. Gladden sent a letter to plaintiff Stringer informing him that Gladden "has been retained by Mr. and Mrs. Reed concerning the farm lease dated April 4, 1969." The letter concluded with: "Any further correspondence or communication which you might have concerning this transaction should be directed to my office." Defendants admitted that Gladden represented them.

On March 11, 1974, Alpers, representing plaintiffs, wrote a letter to Gladden, representing defendants, acknowledging receipt of the March 4, 1974 letter and enclosing a deed for execution by the defendants. Alpers' letter continued: "Since [Exhibit A] calls for a closing on March 14, 1974, we will be happy to close this transaction in your office at 10 a. m. on March 14, 1974. At this time I will deliver to you the $13,000 provided in the agreement in exchange for delivery of the enclosed warranty deed signed by Mr. and Mrs. Reed. At that time we can also settle the prorated taxes for 1974. If this closing date and time are not satisfactory with you please let me know immediately." Gladden admitted receiving that letter on March 12, 1974.

On March 14, 1974, at 10 a. m., plaintiff Stringer and Alpers went to Gladden's office. According to Stringer "we asked Gladden for the deed and told him we were there to pay for the farm and to receive the deed. Gladden said he did not have anything for us and basically refused to discuss the thing any further." Stringer tried to give Gladden a cashier's check in the amount of $13,000 payable to the defendants but Gladden would not accept it. Stringer testified that since March 14, 1974, he has remained willing and able to pay the purchase price of $13,000 in exchange for defendants' deed.

2. The final payment of rent apparently had been made in March 1973.

Although both defendants were present during the trial, neither testified nor was any evidence presented on their behalf. Most of the admissions and statements attributed to them in the foregoing summary of the evidence were contained in interrogatory answers which plaintiffs placed in evidence.

The first of defendants' seven appellate contentions, each unavailing, is that plaintiffs were not entitled to equitable relief because defendants signed Exhibit A "on the mistaken belief that they were signing only a lease and a right of first refusal to plaintiffs if defendants decided to sell and the unilateral mistake of defendants is compelling grounds for the denial of specific performance."

In developing their argument under this point defendants proceed upon the invalid factual assumption that the evidence "conclusively and without contradiction" showed that the defendants, when signing Exhibit A, entertained the described mistaken belief.

■ Thus the unilateral mistake on which defendants rely does not consist of their lack of knowledge of the contents of Exhibit A; rather it consists of their alleged lack of knowledge of the legal effect of its plainly worded provisions. Authority exists to the effect that such a unilateral mistake, if it existed, in itself is no bar to a claim for specific performance.[3] It is not necessary to determine whether that view constitutes the law in Missouri for the reason that the trial court may properly have found that no such mistake existed in the minds of defendants.

■ Defendants' answer had pleaded the mistake as an affirmative defense. Rule 55.08, dealing with affirmative defenses, does not include mistake among those specifically enumerated. That rule, however, does require the affirmative pleading of "any other matter constituting an avoidance or affirmative defense." A mistake of

the type under discussion, if a defense at all, was an affirmative defense because it rested "upon some fact not included in the allegations necessary to support" the plaintiffs' case. *Semo Grain Company v. Oliver Farms, Inc.,* 530 S.W.2d 256, 258[1, 2] (Mo. App.1975).

■ A defendant who asserts an affirmative defense has, initially and throughout the case, the burden of proof thereon. *Gennari v. Prudential Insurance Co. of America,* 335 S.W.2d 55, 60[2] (Mo.1960). See also *Mochar Sales Company v. Meyer,* 373 S.W.2d 911, 914[2] (Mo.1963).

In *Meade v. Brown,* 218 Mich. 556, 188 N.W. 514 (1922) there was a suit for specific performance of an option to purchase land contained in a lease. The defense was, in part, that the insertion of the option was due to a mistake on the part of the scrivener and the option was inserted without the knowledge of the defendants. The court acknowledged that such a unilateral mistake "may, if clearly established, be ground for rescission, though not for reformation of the agreement." However, the court stated "the burden of proof is on defendants to overcome the presumption that when they signed the writing they understood its contents. This they have failed to meet." *Meade* at p. 515.

■ Other authorities, in somewhat similar factual situations, support the proposition that this type of mistake, if a valid defense at all, is an affirmative one on which the defendants have the burden of proof. *Cawley v. Jean,* 189 Mass. 220, 75 N.E. 614 (1905); *Church of Christ v. Beach,* 7 Wash. 65, 33 P. 1053 (1893); 81 C.J.S. Specific Performance, § 140, p. 714.

It is true, as defendants emphasize, that plaintiffs placed in evidence the answers of each defendant to interrogatories directed to them. One of the answers of defendant Bernice was: "It was my understanding that Mr. Stringer was to clear off the pas-

---

3. *Osborne v. Fairley,* 138 Ark. 433, 211 S.W. 917 (1919); "Moreover a unilateral mistake as to the legal effect of an agreement does not ordinarily affect its validity in the absence of

fraud or other special circumstances." 54 Am. Jur.2d Mistake, Accident or Surprise, § 17, p. 462. See Anno. 75 A.L.R. 896.

ture land, to fertilize and seed the pasture land to grass, and thereby to improve the pasture land and not cut the timber. It was further my understanding that because Mr. Stringer was going to make the improvements to the land, that if my husband and I decided to sell the land during the rental period then we would give Mr. Stringer the first chance to buy the land at a price of $50.00 per acre." Defendant Wilford gave a similar answer.

■ "It is only where the adversary's testimony, as offered by the opposite party, is uncontradicted or is the only evidence on the point that the latter is bound by such testimony." *Taylor v. Riddle*, 384 S.W.2d 569, 574[3] (Mo.1964). See also *Frazier v. Stone*, 515 S.W.2d 766, 769[13] (Mo.App. 1974).

It was the testimony of plaintiff Stringer that he discussed with the defendants the particulars of the agreement on April 1, 1969; that the next day Stringer told attorney Alpers "what we had agreed to" and asked the attorney to draw up the contract; that Alpers did draw up the agreement; and that, except for the deletion of the last sentence of paragraph 3, Exhibit A, as drafted by Alpers, was the same as that which was verbally agreed to on April 1.

It will be recalled that the defendants, again by their answers to interrogatories, agreed that Alpers had read Exhibit A to them. It was at the insistence of defendants that the last sentence of paragraph 3 was deleted. It is reasonable to infer from the latter action that the defendants were aware of the particulars of the agreement after it had been reduced to writing and that they understood the meaning of the portion deleted, even though the latter is couched in legal language. The option sought to be enforced was contained in paragraph 5 of Exhibit A. However, paragraph 3 called further attention to the option by stating that the lease "essentially is an option to purchase with lessees in possession during the option period."

Paragraph 6 of Exhibit A contained, for *defendants'* benefit, an option to *sell*. Paragraph 6 provided, in effect, that upon defendants' giving 60 days written notice to plaintiffs of defendants' intention to sell the land, plaintiffs were required to purchase the land for $13,000 on a prescribed payment schedule and with proration of taxes. The option to sell was exercisable at any time during the five-year term.

It is reasonable to infer that the deletion of the last sentence of paragraph 3, done at the insistence of defendants, and the insertion of paragraph 6, which redounds solely to their benefit, are inconsistent with a lack of awareness, on defendants' part, of the nature of an option and the fact that paragraph 5 contained one.

Further, after defendant Bernice received the January 4, 1974, letter from plaintiffs, defendants had a conference with plaintiff Stringer in which the latter mentioned his intention to exercise the option. Bernice's response was not to the effect that she did not understand the agreement to contain an option; instead she made a comment which can be construed to mean that the option had lapsed because the last rental payment had been made.

■ The evidence discloses that a copy of Exhibit A had been in the possession of the defendants since the day of its execution. The defendants, though present at the trial, offered no testimony relating to the unilateral mistake or any other alleged defense. "It is well settled that the failure of a party having knowledge of the facts and circumstances vitally affecting the issues on trial to testify in his own behalf . . . raises a strong presumption that such testimony would have been unfavorable and damaging to the party who fails to proffer the same." *Bean v. Riddle*, 423 S.W.2d 709, 720[9] (Mo.1968).

■ Although the failure of the defendants to testify "cannot be treated as independent evidence of a fact otherwise unproven . . . it can be considered in measuring the credibility or probative force of the evidence presented." *Guthrie v. Gillespie*, 319 Mo. 1137, 6 S.W.2d 886, 889[5–6] (Mo.1928). See also 29 Am.Jur.2d Evidence § 188, p. 238 (Note 5). It seems that the

quoted principle is not sapped of its vitality merely because the plaintiff introduced defendants' answers to interrogatories. See *Pasternak v. Mashak*, 428 S.W.2d 565, 569[10] (Mo.1967) and *Block v. Rackers*, 256 S.W.2d 760, 764[7] (Mo.1953).

Thus the evidence was such that the trial court could reasonably conclude that defendants had failed to sustain their burden of proof and that there was no unilateral mistake in the minds of the defendants with regard to the meaning of the option contained in paragraph 5 of Exhibit A.

Defendants' first contention, lacking in factual support, has no merit.

Defendants' second contention is that plaintiffs were not entitled to specific performance because Exhibit A, and particularly paragraph 5 thereof, "was unfair, overreaching and the result of sharp practices on the part of plaintiffs and there was such an inadequacy of consideration."

Much of the portion of this opinion dealing with defendants' first contention is fatal to their second. The alleged "sharp practices" on the part of plaintiffs consisted, according to defendants' brief, of the making of representations to the defendants "that the agreement was just a lease and a right of first refusal." As the discussion under the first contention points out, the trial court properly resolved that factual issue in favor of the plaintiffs.

There is no factual support for defendants' assertion that there was "an inadequacy of consideration." It seems to be the position of defendants that the purchase price of $13,000 contained in Paragraph 5(a), or $50 per acre, was inadequate. However, the only testimony dealing with the value of the land at any specific time was the testimony of defendant Wilford Reed, in answer to an interrogatory, that "land was selling for $50 an acre as of April 4, 1969," the date Exhibit A was entered into.

Defendants stress that in response to another interrogatory requesting the value of the land "on the date you answer these interrogatories"[4] each defendant, denying

any personal knowledge of its value, said that an offer had been made "by a person who has no knowledge of the pending lawsuit that they would pay $200 per acre for the land."

■ "Generally the questions of the fairness of a contract or adequacy of price are to be considered as of the time the contract was entered into." *Roberts v. Clevenger*, 225 S.W.2d 728, 733[10] (Mo.1950). See also 71 Am.Jur.2d 112, Spec.Perf. § 83. "[I]n determining whether or not a contract is so unfair or inequitable or is unconscionable so as to deny its specific performance, the transaction must be viewed prospectively, not retrospectively. The same rule applies with respect to sufficiency of consideration." *Tuckwiller v. Tuckwiller*, 413 S.W.2d 274, 278[4] (Mo.1967). See 11 A.L. R.2d § 6, 390, 406. (Change of conditions after execution of contract or option for sale of real property as affecting right to specific performance.)

■ The price of $50 per acre contained in paragraph 5(a) represented the price "land was selling for" according to the admission of defendant Wilford Reed. It was also the price contained in paragraph 6 of Exhibit A which gave the defendants an option to sell.

The interrogatory answer dealing with the alleged $200 offer by an unidentified person of unknown means at an unknown time was not, at least when considered with the rest of the evidence, a bar to specific performance.

Defendants' second contention, lacking in factual support, has no merit.

■ Defendants' third contention is that plaintiffs were not entitled to specific performance because the petition failed to allege, and the evidence failed to show, that defendants had title to the land or the means to obtain it, either at the time of the filing of the action or at time of trial.

Paragraph 1 of the petition alleged that on April 4, 1969, the defendants "were in possession and claiming to be owners of"

---

4. The interrogatories were answered on January 22, 1975.

the land involved, and the legal description was set out. Defendants' answer admitted paragraph 1. The answer also admitted that defendants signed Exhibit A. Although the answer set forth certain affirmative defenses discussed elsewhere in this opinion, it did not allege that defendants lacked the title or lacked the means to obtain it. There was, of course, no proof of defendants' inability to perform.

In *Tebeau v. Ridge*, 261 Mo. 547, 170 S.W. 871 (banc 1915) the plaintiff-buyer brought a suit for specific performance of a contract to convey land. The petition did not aver that the defendant was, at the time of bringing the suit, the owner of the land. However, the petition set out the lease which contained the option to purchase.

The court, in rejecting defendant's assertion that the petition failed to state a cause of action, pointed out that both parties "treated the case upon the trial as if the petition did state that defendant owned the property." The court also said at p. 874:

"Besides this there are cases from other jurisdictions which seem to hold that the vendee does not need to offer proof of the vendor's title; the fact that the vendor assumed to sell raised the presumption of title, naught else appearing. *Prince v. Bates*, 19 Ala. 105; *Gartrell v. Stafford*, 12 Neb. 545, 11 N.W. 732, 41 Am.Rep. 767. In this view the setting out in the petition in haec verba of the paper containing the option to buy was a sufficient compliance with any requirement to plead ownership in the defendant. We disallow this contention."

In *Richards v. Johnson*, 261 S.W. 53 (Mo. 1924) there was a suit for specific performance of a contract to exchange land for land. The defendant asserted that the petition failed to state a cause of action because it did not allege that defendant was the owner of the land he was to give in exchange for plaintiff's land. The court said at p. 54:

"We must rule this against [defendant], because the petition alleges that 'defendant was in possession and claimed to be the owner' thereof, and, 'being desirous of dis-posing of said land he claimed possession and owner of,' entered into the contract. The petition also alleges that defendant 'executed a warranty deed conveying the property * * * to plaintiff,' and placed it in escrow.

"We think the allegation of ownership in defendant sufficient to withstand a general demurrer."

In *Columbia River Co. v. Smith*, 83 Or. 137, 162 P. 831 (1917) the court held that a buyer, seeking specific enforcement of a written agreement to convey real estate, need not anticipate or negative the seller's defense by pleading that the seller has the present ability to comply with his contract. The court said at p. 833: "Whether or not the defendant is capable of performing is a matter peculiarly within his knowledge, and his rights are conserved by the privilege of answering and making the defense of inability."

In *Harrigan v. Dodge*, 200 Mass. 357, 86 N.E. 780 (1909), an action for specific performance of a land contract brought against the seller, the court said:

"It is matter of defense to the prayer for specific performance, if he is unable to perform his contract on account of lack of ownership, and not a fatal defect apparent upon the statement of plaintiff's claim."

To the same effect see *Tyrrell-Combest Realty Co. v. Mullen*, 268 S.W. 1011, 1013[1–3] (Tex.Civ.App.1925).

The allegations of paragraph 1 of the petition, admitted by the answer, coupled with admission by defendants that they signed Exhibit A, which was attached to the petition and introduced into evidence, require the denial of defendants' third contention.

Defendants' fourth contention is that plaintiffs were not entitled to specific performance because the option to buy, contained in paragraph 5 of Exhibit A, was not supported by consideration.

■ At least one reason to deny the fourth contention is that the payment of the stipulated rent by plaintiffs was consideration for the option. *Chapman v. Breeze*,

355 Mo. 873, 198 S.W.2d 717, 719[4] (1947); *Hathaway v. Nevitt*, 358 Mo. 202, 213 S.W.2d 938, 941[1] (1948); *Cummins v. Dixon*, 265 S.W.2d 386, 392[1] (Mo.1954).

■ Defendants' fifth contention is that plaintiffs were not entitled to specific performance because "the specified date for purchasing the land was March 15, 1974, and there was no attempt to obtain the deed and deliver the purchase price at any time other than on March 14, 1974." Further defendants say that plaintiffs' exercise of the option was not "unequivocal and unconditional because the acceptance called for an abstract to be furnished by the defendants and Exhibit A did not make such provision." Finally, under this point, defendants state that the exercise of the option "was not unequivocal since it stated that it was plaintiffs' intention to exercise the option."

It will be noted that paragraph 5 of Exhibit A gives plaintiffs the exclusive right to purchase the land on March 15, 1974, upon giving notice. Exhibit A does not contain a provision that time was of the essence of the agreement. Attorney Alpers' letter of March 11, 1974, to attorney Gladden stated, erroneously, that Exhibit A "calls for a closing on March 14, 1974." The letter further stated that: "We will be happy to close this transaction at 10 a. m. in your office on March 14, 1974, . . . If this closing date and time are not satisfactory with you please let me know immediately." Although Gladden received that letter on March 12, 1974, he did not inform Alpers that the proposed closing date of March 14 was not satisfactory. Plaintiff Stringer and Alpers went to Gladden's office on March 14 and expressed their willingness to close the transaction. They tendered a cashier's check in the amount of $13,000, which Gladden rejected. Gladden made no objection to the form of the tender nor did he make any statement to the effect that it was one day premature. Gladden's conduct was such that it is reasonable to infer that had a tender been made the following day, March 15, it too would have been rejected. This action was instituted on March 20, 1974, and in the petition the plaintiffs renewed their tender.

The matters set forth in the preceding paragraph justified the trial court in rejecting defendants' contention that the contract was not specifically enforceable because plaintiffs made no tender on March 15.

In *Parkhurst v. Lebanon Pub. Co.*, 356 Mo. 934, 204 S.W.2d 241 (1947) specific performance was granted although there was a six-day delay in the payment of an installment of the purchase money, the contract having prescribed the date for payment. The court pointed out, at p. 247, that in ordinary contracts for the sale of real estate, equity does not regard time as of the essence of the agreement, but the parties may make time of the essence, even without express stipulation to that effect, where such intent is clearly manifested by the terms of the agreement. The court assumed, without deciding, that time was of the essence of the agreement. Nevertheless, in affirming the decree, the court held that even where time is by express stipulation made of the essence, the failure of one of the parties to perform a condition within the prescribed time will not always defeat his right to specific performance if the condition be subsequently performed without unreasonable delay and no circumstances have intervened which would render it inequitable to give such relief. The court also held that strict and literal performance of all the conditions of a contract is not "invariably an essential prerequisite to a decree for specific performance." See also *Nigh v. Hickman*, 538 S.W.2d 936 (Mo.App. 1976).

■ "A formal tender by the purchaser is excused where the tender would be a useless and idle ceremony." 81 C.J.S. Specific Performance § 103, p. 623.

■ Also invalid is defendants' sub-contention that plaintiffs' exercise of the option was ineffective because the letter of January 4, 1974, requested that defendants furnish the abstract. That letter, prior to stating the request, said: "Please consider this letter notice of our intent to exercise the option to purchase the real estate (giv-

ing description) described in (Exhibit A). This letter is intended to be a notice of our election to exercise the option to purchase described in paragraph 5 of (Exhibit A)."

"[W]here an acceptance is unconditional in the first instance, a mere request thereafter made in the letter or notice of acceptance that the offerer attend to incidental matters in closing the transaction, not required of him by the terms of the offer, will not render it ineffectual, when there is no intention to make the acceptance conditional in any way on the granting of the request." 77 Am.Jur.2d Vendor and Purchaser § 17, p. 191.

The following authorities hold that a mere request for an abstract, although the contract does not call for one, does not render the exercise of an option a conditional one and thereby taint its effectiveness: *Horgan v. Russell*, 24 N.D. 490, 140 N.W. 99 (1913); *Blaine County Canal Co. v. Mays*, 65 Idaho 190, 142 P.2d 589 (1943). See also *Cummins v. Dixon*, 265 S.W.2d 386, 396[14, 15] (Mo.1954); Anno. 16 A.L.R.3d 1424.

The language of the letter of January 4, constitutes a clear and unconditional acceptance and the inclusion of the request for the abstract did not invalidate it.[5]

■ The third sub-contention, as this court understands it, is that the January 4 letter was equivocal since it stated that it was plaintiffs' *intention* to exercise the option. The argument seems to be that the letter should have stated "We hereby exercise the option" rather than what it did state. This position is untenable. Paragraph 5 of Exhibit A required the plaintiffs to give 30 days' notice "of their intent to exercise this option." The letter stated that it was notice "of our intention to exercise the option." Then, with an abundance of caution and at the expense of possible redundancy, the letter stated that it was "a notice of our election to exercise the option" and contained a specific reference to paragraph 5.

Accordingly each of the three prongs of defendants' fifth contention has no merit.

■ Defendants' sixth contention is that the trial court erred in sustaining objections to certain questions which defendants' counsel directed to plaintiff Stringer on cross examination. Rule 73.01, Par. 1(a) provides, in pertinent part, that in non-jury cases "the court shall rule upon all objections to evidence as in jury cases. Where the evidence is ruled inadmissible the court upon request shall take and report the evidence in full, unless it clearly appears that the evidence is not admissible on any ground or that the evidence is privileged." Here there was no such request by defendants' counsel.

An objection to the exclusion of testimony cannot be considered on appeal in the absence of a showing of what the testimony would have been and that it was relevant and material. Reversible error cannot be predicated on the exclusion of a proper question where there is no offer of proof that the answer would have been in favor of the complaining party. *Cobb v. R. W. Beasley Const. Co.*, 536 S.W.2d 535, 536[1] (Mo.App.1976).

Defendants' sixth contention has no merit.

■ Defendants' seventh contention is that plaintiffs were not entitled to specific performance because the evidence failed to show that plaintiffs did not have an adequate remedy at law. "This contention overlooks the fact that a tract of land is regarded as unique, entitling purchaser to specific performance of a contract for its purchase, irrespective of special facts showing an inadequacy of purchaser's legal remedy." *Wilkinson v. Vaughn*, 419 S.W.2d 1, 5[2] (Mo.1967).

The judgment is affirmed.

All concur.

---

**5.** The letter of January 4, 1974, requested the abstract "so that we might have it extended." It is clear that the cost of the extension would be borne by plaintiffs. It is not uncommon, at least in rural Missouri, for the seller to deliver the abstract to the buyer so that the latter may bring it up to date, even in the absence of an express agreement to do so.