250 S.W.2d 167 (1952)
VALENTINE
v.
ST. LOUIS UNION TRUST CO. et al.
No. 42683.
Supreme Court of Missouri, Division No. 1.
July 14, 1952.
Robert C. Brinkman, St. Louis, and William R. Gentry, St. Louis, for appellants.
Thomas F. McDonald, Raymond F. McNally, Jr., St. Louis, and John F. Sloan, St. Louis, for respondent.
CONKLING, Judge.
This replevin action to gain possession of certain certificates of stock, certain bonds and some cash, all specifically described, and alleged to be of the value of $8,548.56, was instituted by Miss Gertrude Valentine on March 25, 1950. On July 30, 1950, Gertrude Valentine died at the age of 67 years. Thereafter her brother, Louis P. Valentine (hereinafter called plaintiff), was appointed administrator of her estate, was substituted as plaintiff, and thereafter prosecuted the action. St. Louis Union Trust Company and Blanche Liemke (hereinafter called defendants) are coexecutors under the last will of Mrs. Laura Valentine Krueger, deceased, and by answer denied they are unlawfully withholding the property described in the petition and denied plaintiff is entitled to possession of that property. Defendants' answer admits they took possession of the above property as coexecutors of the Laura Krueger estate, and alleges that the property here in issue was found among Laura Krueger's assets in a safety deposit box in the First National Safe Deposit Company in St. Louis; and the answer asserts the disputed property belonged to Laura Krueger *168 at her death, and has been and now is in the lawful possession of defendants as such coexecutors, and that plaintiff has no interest therein and no right of possession thereto.
A jury was waived and the cause was tried to the court. From a judgment for plaintiff defendants appealed.
Mrs. Laura Valentine Krueger was the older sister of Gertrude Valentine. The latter had never married. After 1899 and during the married life of Mrs. Laura Valentine Krueger, her younger sister Gertrude Valentine had lived with Mr. and Mrs. Krueger. Mr. Krueger died July 22, 1929. Thereafter the two sisters and Mrs. Krueger's daughter continued to live together until her daughter Blanche married. The two sisters thereafter lived together until near the time of Mrs. Krueger's death on October 24, 1949, when the latter was 84 years of age. Mrs. Krueger left a rather large estate and her will named the St. Louis Union Trust Company, and her daughter, Mrs. Blanche Liemke, as her coexecutors. Gertrude Valentine had no safety deposit box, but Mrs. Krueger had in her name, "Mrs. Laura Krueger," safety deposit box number 12136 at the First National Safe Deposit Company. It was agreed that that box was originally rented by Mrs. Krueger on June 19, 1925, was in Mrs. Krueger's name alone, and that her sister, Gertrude Valentine, never had deputy access to it. Mrs. Krueger had but one safety deposit box.
After the death of Mrs. Krueger, Mrs. Blanche Liemke, Gertrude Valentine, a representative of the Safe Deposit Company and Mr. Wismar, a Trust Officer of the St. Louis Union Trust Company, opened and inventoried Mrs. Krueger's safe deposit box. In the box were found 55 stock certificates and 16 bonds belonging to Mrs. Krueger, having an aggregate value of more than $65,000. Title to that last above noted property is not questioned nor in issue. Also found in the safe deposit box were two certain sealed envelopes upon each of which was written in the handwriting of Mrs. Laura Krueger: "Property of Gertrude Valentine." In those sealed envelopes, so marked, were 13 certificates of stock, 5 bonds, and 3 other smaller sealed envelopes similarly marked in which there was $673.81 in cash, all of an aggregate total value above noted. It is the property in those sealed envelopes marked, "Property of Gertrude Valentine," which is the subject matter in this action. Also in issue here is the title to one certain U. S. Government Bond, for $100 series G, No. C1324422 G, and dated April 1, 1943, payable upon its face to "Mrs. Laura Krueger or Miss Gertrude Valentine." That last series G bond was in the safety deposit box but not in an envelope. Each of the above-mentioned 13 stock certificates, which were in one of the Gertrude Valentine envelopes, upon its face recites, "This certifies that Miss Gertrude Valentine is the owner of," etc., such certificate for the number of shares thereon specified. Since the safety deposit box was opened all the property now in issue in this action has been in the custody and possession of St. Louis Union Trust Company. Mr. Wismar testified that when the box was opened and was being inventoried he asked Gertrude Valentine about the envelopes marked as her property, and their contents, but Wismar did not "recall that she made any definite statement that these items were her property."
Mrs. Bertha Ploehn, who lived next door to Mrs. Krueger and Gertrude Valentine for nearly 20 years, knew them for that time and visited with them often, testified that in 1949, in Gertrude Valentine's presence, Mrs. Krueger told her (Mrs. Ploehn) that "should anything happen to her (Mrs. Krueger) Gertie (Gertrude Valentine) would be taken care of. She said she had a home there and there were some securities for her (Gertrude). At other times, when Mr. Krueger bought her any stocks or bonds he would always get Gertie one. She said also they had a safety deposit box together." The witness related other and earlier conversations with Mrs. Krueger to the same effect. On one occasion during Mrs. Krueger's last illness, Gertrude Valentine put her arms around her sister (Mrs. Krueger) and wept, and the latter said, "Gertrude, don't cry. You have been well taken care of and you are in my will." Mrs. *169 Quirk, who lived next door to Mrs. Krueger and Gertrude Valentine for 27 years, testified she talked often with Mrs. Krueger in the presence of Gertrude Valentine; and that "Mrs. Krueger told me she had a safe deposit box, her and Gertrude, and that Gertrude had some bonds in there, and she had them in a separate envelope marked "property of Gertrude' * * * Gertrude is taken care of." Mrs. Quirk also testified:
"Q. What else did she say? A. That she had her bonds in there and Mr. Krueger every time he bought her a bond he would buy one for Gertrude.
"Q. Who had the bonds in there? A. Gertrude had hers in Mrs. Krueger's safe deposit box.
"Q. Remember anything else being said at that time? A. No. Just that she said, `Gertrude is being taken care of.'
"Q. You told us about that one conversation. How many times did you hear her say that, or make those remarks you have told us? A. In the last three years."
The sisters, Mrs. Krueger and Gertrude Valentine, were almost constantly together. When one of them went anywhere, the other usually went along. They took trips together and even went visiting and shopping together. The record reflects a very close and devoted sisterly relationship.
From October 14, 1949, to May 18, 1950, Gertrude Valentine stayed at the home of her brother, plaintiff herein. At the request of her physician she then went to the nursing home of the Little Sisters of the Poor. Gertrude Valentine received checks for stock dividends. Those checks continued to come to Gertrude after she was staying at her brother's home, and even after she went to the home of the Little Sisters of the Poor. Some came after Gertrude's death. Gertrude Valentine had an account in a St. Louis bank and deposited therein all such dividend checks received during her lifetime. All of the stocks in issue here have regularly paid dividends since 1948.
Plaintiff's trial theory of the case was that the personal property sought to be recovered "had been Miss Valentine's for some years before her death, and that there was simply a bailment, as a matter of convenience to have them in the (Mrs. Krueger's) box." Plaintiff's counsel in his opening statement further stated: "Specifically, I want to rule out any gift theory, or trust theory, or any attempt to make any testamentary bequest outside of a will."
Upon their appeal defendants make the single contention that the court below erred in rendering judgment for plaintiff; this contention defendants base upon their argument that the oral evidence is weak, and indefinite and is insufficient to overcome a presumption of the ownership of the property by Mrs. Krueger which defendants claim arises from the property in question being in Mrs. Krueger's safety deposit box.
We first consider as a separate transaction the evidence as to the abovementioned U. S. Government series G bond of $100 dated in 1943. This bond was in the safety deposit box but was not in an envelope marked in Gertrude Valentine's name. Upon its face it was payable to "Mrs. Laura Krueger or Miss Gertrude Valentine." Mrs. Krueger had predeceased Gertrude Valentine. Upon the death of the former, title to this bond had vested in Gertrude Valentine. U. S. Treasury, "Regulations Governing United States Savings Bonds," Section 315.45. See also, Conrad v. Conrad, 66 Cal.App.2d 280, 152 P.2d 221; In re Myers' Estate, 359 Pa. 577, 60 A.2d 50; In re Brown's Estate, 122 Mont. 451, 206 P.2d 816. The Treasury Regulation pertaining to co-ownership of United States savings bonds, with respect to such co-owners creates a joint tenancy with right of survivorship. It is held that "the question is not one of gift but of contract under the federal regulations, those regulations providing for exclusive ownership in the surviving co-owner, and that death terminates all interest in the other co-owner." Defendants' brief makes no contention that defendants have any title at all to this particular bond.
We come now to defendants' contention that the record before us does not support a judgment for plaintiff. Defendants' entire position, as we read their brief, *170 seems based upon their argument that the stocks, bond and cash were in Mrs. Krueger's safe deposit box and that the evidence in the case is not only unsatisfactory and without probative value, but that it "fails to identify any particular stock or bond (or cash) sufficiently to base a judgment in replevin upon it." But we think the record supports the judgment entered for plaintiff.
It is well settled law that a certificate of stock is of itself evidence of the title thereto of the person named on such certificate to the number of shares thereon stated. Such certificate is a muniment of title of the person named thereon, and an assurance to the world that the certificate is the property of the person thereon named. National Bank of Webb City v. Newell-Morse Royalty Co., 259 Mo. 637, 168 S.W. 699; Mitchell v. Newton County Bank, 220 Mo. App. 223, 282 S.W. 729; Zorensky v. Wellston Clothing Co., Mo.App., 223 S.W.2d 851; Vanstone v. Goodwin, 42 Mo.App. 39, 47; 18 C.J.S., Corporations, § 264, pages 730, 731.
With defendants' contention that the evidence fails to identify any particular stock certificates or bonds or cash sufficiently to support plaintiff's judgment in this replevin action, we are unable to agree. It appears that Mrs. Krueger told Mrs. Quirk that she (Mrs. Krueger) had a safe deposit box; that Gertrude Valentine had some bonds and securities in there; that "she (Gertrude) had them in a separate envelope marked property of Gertrude' "; that "she had her bonds in there"; that "Gertrude had hers in Mrs. Krueger's safety deposit box"; that when the safety deposit box was opened this personal property now in issue was in Mrs. Krueger's box; that it was confined within sealed envelopes upon which Mrs. Krueger had written, "Property of Gertrude Valentine"; that within the two larger sealed envelopes were three small sealed envelopes containing various amounts of currency and silver, and that upon those envelopes Mrs. Krueger had written, "Property of Miss Gertrude Valentine"; and that upon the face of each certificate of stock each issuing corporation had issued it to "Miss Gertrude Valentine." No one except Mrs. Krueger had access to the box so it must be inferred that Mrs. Krueger had placed Gertrude Valentine's property in the safety deposit box in envelopes marked with Gertrude Valentine's name. Prior to her death and in conversations with Mrs. Quirk, Mrs. Krueger had herself identified Gertrude Valentine's property as being in her (Mrs. Krueger's) box, and after Mrs. Krueger's death it was found there as the latter had identified it.
Defendants seem to argue that because the references by Mrs. Krueger (in the latter's conversations with Mrs. Ploehn and Mrs. Quirk) to the personal property here in issue did not further identify the stock certificates and bonds by reference also to the names of the various issuing corporations (and other details) there is no sufficient identification to support the trial court's instant judgment. That argument might have some force, (1) if Mrs. Krueger had not, during her lifetime, fully identified the property, and the title thereto, by telling Mrs. Quirk that "Gertrude had hers (this very property) in Mrs. Krueger's safe deposit box * * * and she had them in a separate envelope marked `property of Gertrude' " and (2) if that property (of Gertrude's) had not been found exactly as Mrs. Krueger said it would be, and in envelopes marked in Mrs. Krueger's handwriting, "Property of Gertrude Valentine," and (3) if the stock certificates upon their face had not shown that in fact they were the property of Gertrude Valentine. But all those facts do here appear and they do constitute a sufficient identification by Mrs. Krueger of the property in question as being the property of Gertrude Valentine. The trial court had the witnesses and these facts before him. The weight and value of the testimony was for the trial court, and the judgment of the court is supported by substantial evidence.
Both parties cite and rely upon Ross v. Pendergast, 353 Mo. 300, 182 S.W.2d 307, 310, which was a replevin action tried before a jury, to recover currency found in a safe deposit box in an envelope bearing the name of the plaintiff, Charles C. Ross. In that case the jury found for defendant. Upon appeal defendant's judgment was reversed for the giving of an erroneous instruction. *171 The instant case, however, is stronger as to facts than the Ross case, but we held in that case that that evidence "would justify a verdict for plaintiff". Defendants also cite and rely on Cartall v. St. Louis Union Trust Co., 348 Mo. 372, 153 S.W.2d 370, Trautz v. Lemp, 329 Mo. 580, 46 S.W.2d 135, and Elliott v. Gordon, 10 Cir., 70 F.2d 9. The Cartall case presented a question of whether the notes were a gift inter vivos and what was there said in no wise determines or rules the instant case. Trautz v. Lemp, supra, was a will construction action wherein there was an attempted gift of corporate stock which we held was not completed. Elliott v. Gordon, supra, involved a gift of personal property in trust where donor attempted to reserve title. Those cases do not rule the question instantly before us.
Defendants' brief contends "there was no delivery of the bonds, cash or certificates of stock to Gertrude Valentine (and) hence there was no completed gift of any of them." But this is not a gift case, and gift cases, such as Napier v. Eigel, 350 Mo. 111, 164 S.W.2d 908, do not rule the controversy now before us. It is here contended, and the evidence establishes, that the property legally belonged to Gertrude Valentine, and that at the time of her death she had the legal title thereto and was entitled to the immediate possession thereof.
Defendants seem to rely on what we said in Ross v. Pendergast, supra [353 Mo. 300, 182 S.W.2d 309], that possession and control of property "are circumstances that raise a presumption of ownership in the possessor and anyone else claiming the property has the burden of proof * * * by a preponderance or greater weight of the credible evidence." Such may be conceded, but what is there said is not contrary to our instant conclusion. The trial court here applied what was there said.
As to the above stated proof defendants merely contend that the testimony of the above noted witnesses should not have been believed by the trial court. There was no testimony at all to the contrary. And the trial court had the right to believe those witnesses and obviously did believe them. In this action we are not concerned with the source of Gertrude Valentine's title to the property, or how or from whom she acquired the property here in issue. The evidence in the case shows it was her property and that plaintiff was entitled to immediate possession, and nothing more is or can be here required than that. For all that appears she may have earned the money and the money used to purchase the stocks and bonds during her working years. In any event it appears the title thereto was in Gertrude Valentine at the time of her death.
The judgment is affirmed.
All concur.