Arthur E. WEHMEIER,
Plaintiff-Appellant,

v.

The PUBLIC SCHOOL RETIREMENT
SYSTEM OF MISSOURI,
Defendant-Respondent.

No. 43584.

Missouri Court of Appeals,
Eastern District,
Division Four.

March 2, 1982.

Motion for Rehearing and/or Transfer
Denied April 16, 1982.

Application to Transfer Denied
May 17, 1982.

Darold E. Crotzer, Steinberg & Crotzer, Clayton, for plaintiff-appellant.

John Ashcroft, Atty. Gen., B. J. Jones, Asst. Atty. Gen., Jefferson City, for defendant-respondent.

PUDLOWSKI, Judge.

This appeal is brought by the plaintiff-appellant, Arthur E. Wehmeier, from a judgment entered by the circuit court of St. Louis County on September 23, 1980. Essentially, appellant is challenging the denial by respondent (The Public School Retirement System of Missouri) of creditable service in the Missouri Retirement System pur-

chased by appellant on the basis of his out-of-state teaching service in the State of Illinois. The facts are as follows.

Appellant was a member of the Illinois State Teachers' Retirement System from 1939 through 1942, and 1946 through 1951. From 1943 to 1946 appellant was in the Armed Forces of the United States, for which he received service credit in the Illinois Retirement System. When he left Illinois in 1951, appellant had fifteen years of service credit. Under Illinois law in 1951 the appellant would become eligible with fifteen years of service credit, to receive retirement benefits upon reaching the age of sixty. Ill.Rev.Stat., ch. 122 § 25–49(1) (1951). Appellant could forfeit his future benefits in two ways. First, he could demand a refund of his contributions to the Illinois Retirement System under Ill.Rev. Stat., ch. 122 § 25–58(1) (1951). Second, appellant could forfeit his Illinois service credit and thus his future benefits, if he used it for credit in any other statutory public school teachers' retirement system. Ill.Rev.Stat., ch. 122 § 25–44(7) (1951). Appellant's rights under Illinois law remained substantially unchanged through his retirement in Missouri in 1976.

Appellant became a member of the respondent-retirement system in 1952. On June 21, 1955 appellant made application to the respondent to purchase Missouri service credit (creditable service) on the basis of his Illinois service credit pursuant to 1953 Mo. Laws, §§ 169.050(7) and (8), pp. 485–486.[1] A member of the Missouri Retirement System may elect to purchase up to ten years of membership service credit in the system

---

1. Hereinafter all statutory references are to the 1953 Mo. Laws unless otherwise indicated. This statute was subsequently repealed and re-enacted without significant change as § 169.-055, RSMo (1957 Supp.). At the time of appellant's retirement in 1976 the statute, to the extent relevant in this appeal, was unchanged from 1957. § 169.055 RSMo (1969). This provision is currently at § 169.055, RSMo (1978).

"Membership service" is service rendered by a member of the retirement system after the system became operative. § 169.010(12), p. 481. "Prior service" is service rendered by a

member of the retirement system before the system became operative. § 169.010(13), p. 482. Membership service and prior service are the constituents of creditable service. § 169.-010(14), p. 482.

One of the statutory conditions of eligibility for retirement is that the member must accumulate a specific amount of creditable service. § 169.060, p. 487. In addition, the years of creditable service accumulated by a member determines the amount of retirement benefits which the member will receive at retirement § 169.070, p. 488.

for service rendered by the member as a teacher outside of Missouri after 1946; "provided he is not receiving and is not eligible to receive retirement credit or benefits for such service in any other teacher retirement system . . . ." § 169.050(7). The statute goes on to provide that:

> The purchase shall be effected by the member paying to the retirement system with interest the amount he would have contributed thereto had he been a member for the number of years for which he is electing to purchase credit . . . . The payment may be made over a period not longer than the period of membership service credit being purchased, measured from the date of election . . . .

§ 169.050(7).[2]

On June 24, 1955 the executive secretary of respondent acknowledged by letter receipt of appellant's application, and informed appellant of the conditions which must be met before completion of the service credit purchase.[3] First, appellant must pay the contributions required by statute prior to June 23, 1961. Second, appellant must serve in a district included in respondent-retirement-system after the effective date of § 169.050 for as many years as the years of service credit claimed. Third, appellant may not purchase credit if he is receiving, or is eligible to receive retirement credit or benefits from another retirement system. In addition to the conditions outlined above, respondent informed appellant that credit for teaching services out of Missouri would not be allowed to respondent until he applied for retirement.

Appellant paid in full the required contributions on June 15, 1961.[4] He also served

in a district included in the retirement system more than the number of years necessary to allow his purchase of service credit. Both parties agree that the first two conditions to the purchase were satisfied. When appellant made his election to purchase service credit in 1955 he certified that he was not receiving and was not eligible to receive retirement credit or benefits in any other teacher retirement system. From the time appellant became a member of the respondent-retirement-system in 1952 until his retirement in 1976, he made no attempt to forfeit his service credit in Illinois by applying for a refund of his contributions to the Illinois Retirement System.

In 1976 appellant was sixty years old, and applied for retirement. At this time respondent sent a questionnaire to the Illinois Retirement System asking if appellant was eligible to receive retirement credit or benefits from the Illinois Retirement System. Illinois responded that, since the appellant had fifteen years of service credit and had reached the age of sixty, he was eligible to receive monthly retirement benefits. The Illinois Retirement System subsequently informed the respondent that appellant is not eligible for retirement benefits if his Illinois credit is or will be used as credit in another statutory public employee retirement system.

Upon receipt of this information the respondent disallowed appellant's purchase of creditable service on the basis that appellant was eligible to receive retirement credit or benefits from the Illinois Retirement System. In addition respondent refused to allow appellant to forfeit his Illinois service credit in order to qualify for the purchase. On appeal to the circuit court, County of St.

---

2. Section 169.050(8) allows the purchase of prior service credit for services rendered outside Missouri prior to 1946 subject to the same conditions specified in § 169.050(7). Hereinafter the discussion of § 169.050(7) applies with equal force to appellant's attempted purchase of prior service credit under § 169.-050(8).

3. Appellant was eligible to purchase only 8.4 years of credit in Missouri for 10 years of

Illinois service as a result of an adjustment made for his Illinois service prior to 1946.

4. Appellant paid $1,664.74 to respondent to purchase the service credit at issue. When respondent disallowed the purchase in 1976 it returned the sums paid by appellant with interest for a total of $2,880.68.

Louis, the trial court held that the appellant was eligible to receive from Illinois retirement credit or benefits in 1955, and that appellant may not forfeit his Illinois credit to qualify for the purchase of membership credit in the respondent-retirement-system. This appeal followed.

■■■ In order to arrive at a proper resolution of the issues in this case it is imperative that we first define the rights and duties of the parties, and determine when those rights and duties arose. Initially we note that the Missouri legislature established contractual rights for members of the Public School Retirement System of Missouri when it created that system. *State ex rel Phillip v. Public School Retirement System*, 364 Mo. 395, 262 S.W.2d 569, 578 (1953). The legislation contains a statutory offer of retirement benefits to certain public school employees. The offer is accepted by the employee when he becomes a member of the retirement system and begins compliance with the statutory conditions. *State ex rel Phillip v. Public School Retirement System, supra*. This is not to say that the employee's right to retirement payments vests at the time of acceptance. "A condition is an event, not certain to occur, which must occur, unless its non-occurrence is excused, before performance under a contract becomes due." Restatement (Second) of Contracts § 224 (1979). Thus, at acceptance a valid contract is formed, but the employee-member's right to receive retirement benefits does not finally vest until said member has fully complied with the statutory conditions. *Atchison v. Retirement Board of Police Retirement System*, 343 S.W.2d 25, 34 (Mo.1960). In other words, the retirement system is not obligated to pay retirement benefits to a member

until the member satisfies the conditions prescribed by statute.[5]

With these general principles in mind we now turn to examine §§ 169.050(7) and (8). Initially we recognize that these provisions are a statutory offer to sell creditable service to a member of the retirement system based upon that member's out-of-state service. As noted in footnote 1, *supra*, the number of years of creditable service is relevant to a determination of the member's eligibility for retirement benefits and the amount of those benefits. It is apparent that an offer to sell creditable service to a member under §§ 169.050(7) and (8) is not an offer of retirement benefits per se. It is an offer to sell creditable service, the purchase of which will increase a member's retirement benefits if and when those benefits finally vest.

■■ The statutory offer in § 169.050 is in the nature of an option.[6] We recognize that an option must be supported by consideration. *Amos-James Grocery Co. v. Canners Exchange*, 250 S.W.2d 171, 173 (Mo. App.1952). We find such consideration in the legislative purpose behind § 169.050. There is no doubt that the purpose behind this provision is to attract to our public school systems qualified experienced teachers and administrators, and thus improve the quality of public education. In the absence of §§ 169.050(7) and (8) few if any experienced teachers would move to Missouri to take up teaching, because they would forfeit their seniority, tenure, and accumulated service credit in an out-of-state retirement system. The legislature wanted to attract experienced personnel, and recognized the detriment of lost benefits such personnel would suffer by moving to Missouri. Consistent with these pur-

5. The conditions are: (1) contributing to the fund through the years as required by the contract; (2) attaining retirement age; (3) accumulating the required years of creditable service; and (4) applying for the retirement benefits. § 169.030, pp. 482–483; § 169.050, pp. 484–486; § 169.070, p. 488; *Atchison v. Retirement Board of Police Retirement System, supra*.

6. In making this finding we note that the absence of the word "option" in the statute is of little import, because the statute and the contractual rights it creates must be construed by what its language means. *Sunray Oil Co. v. Lewis*, 434 S.W.2d 777, 780 (Mo.App.1968).

poses, the legislature enacted §§ 169.050(7) and (8). In these provisions the legislature granted an option to experienced teachers and administrators to purchase equivalent membership service credit in the Missouri Retirement System, in recognition of the detriment suffered by them when they moved to Missouri and forfeited their out-of-state benefits.

■■ "An option is but a right of election to exercise a privilege." *Keith v. Tucker*, 483 S.W.2d 430, 435 (Mo.App.1972). The option becomes a complete bilateral contract upon the optionee's election to accept the offer within the time specified in the option. *Hathaway v. Nevitt*, 358 Mo. 202, 213 S.W.2d 938, 941 (Mo.1948). Section 169.050(7) states that a member, ". . . may elect within one year after employment in a district included in the system following such service outside of this state, or before July 1, 1955, and prior to retirement, whichever is later, to purchase equivalent membership service credit . . . ." The statute grants the member a right of election to exercise the privilege of purchasing equivalent membership service credit in the Missouri Retirement System. Appellant exercised that right in 1955 when he made his application to purchase creditable service. At that time a binding bilateral contract was formed, and it became incumbent upon appellant to fulfill his obligations under the contract of sale as provided in § 169.050(7).

We now turn our attention to the question of whether the appellant satisfied the statutory conditions of the creditable service purchase as specified by the executive secretary of the respondent in the acknowledgment dated June 24, 1955. As noted earlier, respondent admits that the appellant satisfied the service requirement and made all the required payments. Respondent contends, however, that the appellant was "eligible to receive retirement credit" under § 169.050(7) in 1955, because appellant would become eligible at age sixty to receive retirement payments from the Illinois Retirement System without additional service in that system. For this reason the purchase was disallowed by respondent. On appeal, the trial court disallowed the purchase for the same reason.

■ This is an appeal from the judgment entered following a court tried case. The judgment will be sustained unless there is no substantial evidence to support it, unless it is against the weight of the evidence, unless it erroneously declares the law, or unless it erroneously applies the law. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). The facts are not at issue here. The basis of the appeal is that the circuit court erroneously declared and applied the law when it held that the appellant was eligible to receive "retirement credit" in 1955. The focus of our inquiry is upon that portion of § 169.050(7) which states: "A member who has rendered service as a teacher outside of this state . . ., *provided he is not receiving and is not eligible to receive retirement credit or benefits* for such service in any other teacher retirement system, may elect . . . to purchase equivalent membership service credit . . . ." (emphasis added). Appellant clearly was not receiving, and was not eligible to receive retirement benefits from Illinois in 1955. The question we must decide is whether the appellant was "eligible to receive retirement credit." Unfortunately, there is no statutory definition for the term "retirement credit." Before we can determine whether the appellant was "eligible to receive retirement credit," we must define "retirement credit."

■ The primary rule of statutory construction is to ascertain the intent of the legislature from the language used, to give effect to that intent if possible, and to consider words used in the statute in their plain and ordinary meaning. *City of Willow Springs v. Missouri State Librarian*, 596 S.W.2d 441, 445 (Mo. banc 1980). The interpretation and construction of a statute by an agency charged with its administration is entitled to great weight. *Foremost-McKesson, Inc. v. Davis*, 488 S.W.2d 193,

197 (Mo. banc 1972). The agency, however, is merely an instrument of the legislature, created to carry out a public policy grafted into a statute.

> It has no power to adopt a rule, or follow a practice, which results in nullifying the expressed will of the legislature. It cannot, under the theory of 'construction' of a statute, proceed in a manner contrary to the plain terms of the statute; and the fact that such a rule has been in existence for a long period of time does not give it legal effect or make its legality persuasive on the court . . . .

*State ex rel Springfield Warehouse & Transfer Co. v. Public Service Comm.*, 240 Mo.App. 1147, 225 S.W.2d 792, 794 (Mo.App. 1949).

■ There is no doubt that §§ 169.050(7) and (8) were intended by the legislature to allow employees with service in another state to purchase creditable service in Missouri based upon that out-of-state service. As stated earlier, the legislature recognized the hardship experienced teachers and administrators suffer when they move from one state to another. Sections 169.050(7) and (8) are an attempt to ameliorate that hardship, and breakdown the economic barriers preventing experienced personnel from entering service in Missouri. These provisions were not enacted by the legislature due to any legal compulsion. The only rational purpose for §§ 169.050(7) and (8) is to attract experienced personnel to service in Missouri public schools by offering said personnel an opportunity to purchase credit in the Missouri Retirement System based upon out-of-state service.[7]

It is equally clear, however, that the legislature did not intend to offer the sale of creditable service without limit. Members of the Missouri Retirement System who are receiving or are eligible to receive *retirement benefits* from another state can not elect to purchase creditable service under §§ 169.050(7) and (8). The import of this limitation is clear. A member who has contributed to an out-of-state teachers' retirement system through the years, attained retirement age, accumulated the required years of creditable service and applied for retirement cannot purchase creditable service in Missouri. Another limitation is that a member may not purchase more than ten years of creditable service. § 169.050(7). Conversely, this limitation indicates that the legislature envisioned the purchase of creditable service by individuals with ten years of experience in another state. Thus, the legislature intended to attract teachers with more than a few years of experience to the Missouri public schools, but not allow teachers qualifying for retirement benefits in another state to enter service in Missouri and upgrade their benefits by purchasing credit in the Missouri Retirement System.

Respondent argues that the appellant was eligible to receive retirement credit in 1955 because he would become eligible to receive retirement benefits from Illinois at age sixty *without further service* in the Illinois public schools. In essence respondent defines "retirement credit" as the quantum of creditable service in an out-of-state retirement system required by that system to satisfy the creditable service eligibility requirement. This construction found expression in a regulation enacted by the Board of Trustees of the respondent on September 28, 1959—16 CSR 10–4.010(6), Missouri Code of State Regulations.[8] Thus,

---

7. In *Gubler v. Utah State Teachers' Retirement Board*, 113 Utah 188, 192 P.2d 580 (1948), the Supreme Court of Utah found that the legislative purpose behind a provision in the Teachers' Retirement Act granting service credit to teachers for their prior service in parochial schools "is to attract to and retain in our public school systems, qualified and experienced teachers." *Id.*, 192 P.2d at 584.

8. This regulation provides:
   A member cannot elect to purchase credit or claim credit for services as a teacher outside of a district included in this retirement system for which he is receiving or *for which he may, without additional services*, become eligible to receive a benefit from another retirement system, or for services for which he would have been eligible to receive a benefit without addi-

the appellant, who satisfied the fifteen year creditable service eligibility requirement under the Illinois system, was eligible to receive "retirement credit" in 1955 even though he had not attained the Illinois statutory retirement age and had not applied for any type of benefit.[9] By this construction of "retirement credit" respondent greatly expanded the class of experienced teachers who are ineligible to purchase creditable service under §§ 169.050(7) and (8). In other words, respondent's construction of "retirement credit" places a severe limitation upon the offer to sell creditable service to experienced teachers. For a number of reasons we find this limitation to be contrary to the legislative purpose behind §§ 169.050(7) and (8), and thus, is invalid.[10]

Initially we note that the respondent admits in its argument before us, that it does not encourage the purchase of out-of-state credit, because: the retirement system does not receive employer contribution for the credit purchased by the member on the basis of his out-of-state service; and, Missouri students do not receive the benefits of the member's services in another state. Respondent's attitude is patently hostile to the clear legislative purpose behind §§ 169.-050(7) and (8). Indeed, if the legislature shared the respondent's view, it never would have enacted the statute or would have long since repealed it. Clearly the legislature determined that the benefits enjoyed by Missouri students as a result of receiving instruction from experienced teachers outweighs the respondent's loss of employer contributions. In light of this attitude, it is not surprising that respon-

dent's construction of "retirement credit" severely limits the sale of creditable service. The extent of this limitation is clear if we examine the teachers' retirement systems in a few of our neighbor states.

In Illinois, a member of the Illinois Retirement System with five years of creditable service will be eligible to receive retirement benefits upon reaching the age of sixty-two. Ill.Ann.Stat. Ch. 108½ § 16–132(3), (Smith-Hurd, 1981 Supp.). In Kentucky, a member of the Kentucky Retirement System with five years of creditable service will be eligible to receive retirement benefits upon reaching the age of fifty-five. Ky.Rev.Stat. § 161.600 (1980). In Kansas a member of the Kansas Retirement System with just one year of creditable service will be eligible to receive retirement benefits upon reaching the age of sixty-five. Kan. Stat.Ann. §§ 72–5512 and 72–5518 (1980). If we apply respondent's construction of "retirement credit" to experienced personnel under retirement age attempting to purchase credit in Missouri based upon service in Illinois, Kentucky or Kansas, we find that personnel with just five years of experience in Illinois or Kentucky are prohibited from purchasing credit in Missouri, and an individual with just one year of experience in Kansas is also prohibited from purchasing credit. It is apparent that the vagaries of the statutory creditable service requirements in the retirement systems of various states coupled with respondent's construction of "retirement credit" in 16 CSR 10–4.010(6), operate to deter personnel with only a few years of experience from moving to Missouri by depriving them of the opportunity to purchase equivalent

---

tional services but which eligibility was forfeited.

16 CSR 10–4.010(6) (emphasis added).

**9.** Although 16 CSR 10–4.010(6) was not in effect in 1955 when the contract was formed, respondent argues that the construction of the term "retirement credit" in that regulation is not new, but was used as a matter of agency practice prior to 1955. Appellant contests this. The resolution of this question has no bearing upon our decision. Thus, we assume without deciding that the construction of "retirement

credit" advanced by respondent was a matter of agency practice prior to 1955.

**10.** As noted previously, the trial court relied upon respondent's construction of "retirement credit" embodied in 16 CSR 10–4.010(6) in reaching its decision that the appellant was eligible to receive "retirement credit" in 1955. Consequently, the validity of that construction is properly before this court for review.

credit in the Missouri Retirement System. The deterrent effect of respondent's construction of "retirement credit" is in direct conflict with the legislative purpose of attracting to Missouri experienced personnel who are not receiving retirement benefits from another state. We are constrained not to adopt a construction of a statute which has absurd consequences. *State ex rel. Dravo Corp. v. Spradling*, 515 S.W.2d 512, 517 (Mo.1974). Respondent's construction of the term "retirement credit" which is expressed in 16 CSR 10–4.010(6) entails such consequences. Thus, we hold it is invalid. The respondent has, under the guise of "construction," proceeded in a manner contrary to the plain purpose of the statute, nullifying the express will of the legislature; and the fact that this construction or rule has long been in existence does not render it valid. *State ex rel. Springfield Warehouse & Transfer Co. v. Public Service Comm., supra.*

■ To ascertain the proper construction of "retirement credit" we first look to the context in which the term is used, and then attempt to construe the term to give effect to the legislative intent, if possible. *City of Willow Springs v. Missouri State Librarian, supra.* The term is used in a proviso which prohibits members who are receiving, or eligible to receive, "retirement credit or benefits" from electing to purchase equivalent creditable service. § 169.-050(7). The term "retirement credit" is used in the disjunctive with the term "retirement benefit." Therefore, we can derive the meaning of "retirement credit" by examining the term "retirement benefit." The plain meaning of "retirement benefit" is clear. It refers to a payment which an individual is eligible to receive by virtue of satisfying all the statutory conditions of eligibility for said payment. It is a payment which an individual has a vested right to receive. *Atchison v. Retirement Board of Police Retirement System, supra.* The legislature intended that experienced personnel with vested rights to specific pay-

ments should not be allowed to purchase equivalent credit in Missouri. An individual who has satisfied the service and age requirements under a statutory retirement system does not have a vested right to specific retirement payments until he applies for those benefits. *Atchison v. Retirement Board of Police Retirement System, supra.* Such an individual's rights are ripe for final vesting, but he is not receiving and is not eligible to receive "retirement benefits" until he applies for them. We construe the term "retirement credit" to apply to those individuals whose rights to specific retirement payments have ripened by satisfying the service and age requirements of an out-of-state statutory retirement system. An example will serve to illustrate the basis for our holding.

Assume a teacher is fifty-five years old and has five years of creditable service in Kentucky. This teacher does not apply for retirement benefits in Kentucky, although he has met the statutory age and service requirements. Instead, the teacher takes a position in the Missouri public schools and attempts to purchase equivalent credit in the Missouri Retirement System based upon his Kentucky service. This teacher is not receiving, and is not eligible to receive retirement benefits in Kentucky because he has not applied for those benefits. Thus, the teacher whose right to retirement benefits has ripened could avoid the legislature's policy against allowing teachers with vested rights to purchase equivalent credit simply by not applying for his benefits in Kentucky. To avoid this result the term "retirement credit" covers those teachers and administrators whose rights to retirement benefits have ripened by satisfying the statutory age and service requirements but which have not finally vested because they were not applied for. Applying this construction to the case at hand, it is clear that the appellant was not receiving and was not eligible to receive retirement credit in 1955 because he had not attained the retirement age prescribed in the Illinois Teachers' Retirement Act.

To summarize, appellant was not receiving and was not eligible to receive retirement credit or benefits in 1955 when he exercised his option to purchase equivalent creditable service in the respondent-retirement-system. Furthermore, he satisfied the service and contribution conditions of the creditable service purchase in 1961. Respondent contends, however, that a further condition to the purchase of creditable service under § 169.050 is that the appellant must make his final application for retirement benefits pursuant to § 169.060, p. 485. We find no basis in the statute for the imposition of this additional condition to the sales contract.

Applying for retirement benefits is not specified in § 169.050(7) as a condition to the sales contract for creditable service. The statute provides that the purchase shall be "effected" when the final payment for the purchased credit is made. § 169.050(7). "Effected," when used in a statute means accomplished, consummated or completed. *Maryland Casualty Co. v. General Electric Co.*, 418 S.W.2d 115, 117 (Mo. banc 1967). This indicates that respondent's duty to credit the creditable service purchased by appellant became absolute in 1961 when appellant made his final payment for that credit. Respondent has confused the final vesting of appellant's right to specific retirement benefits and appellant's purchase of creditable service under § 169.050. Application for retirement benefits is a condition precedent of the former, not of the latter.

We recognize that by statute, the Board of Trustees of respondent has the power to make rules and regulations necessary for the administration of the Missouri Retirement System. § 169.020(14), p. 470. This rulemaking power, however, is limited to procedural matters, and does not extend to substantive changes in the statute which the agency administers. *Mobil Oil Corp. v.*

*State Tax Commission of Missouri*, 513 S.W.2d 319, 323 (Mo.1974). Thus, strictly as a matter of administrative procedure or practice, respondent could postpone contacting the Illinois Retirement System until after appellant applied for retirement to obtain information on appellant's eligibility to receive retirement benefits or credit. Respondent cannot, however, make this procedure a condition of the purchase under §§ 169.050(7) and (8), for such a condition is not provided in the statute and would clearly constitute a substantive change in the contractual rights created by that statute. Therefore, having satisfied all the statutory conditions of the purchase in 1961, appellant at that time had an unconditional legal right to the creditable service sought to be purchased under §§ 169.050(7) and (8). Although respondent was legally obligated to credit the purchased creditable service to appellant's account in 1961, it could postpone its final administrative determination of appellant's right to the creditable service until appellant retired in 1976. This administrative practice, however, cannot impair appellant's rights under the statute which became absolute in 1961.

In its argument, respondent expresses some concern that appellant could enjoy a double recovery; the receipt of benefits from two retirement systems for the same years of creditable service. In the case at bar, however, there is no possibility of a double recovery. Under Illinois law a member of the Illinois retirement system forfeits his creditable service in that system if it is used in any other statutory public school teachers' retirement system. Ill.Rev. Stat., ch. 122 § 25–44(7) (1951). Respondent was legally obligated to use ten years of appellant's Illinois credit as credit in the Missouri Retirement System in 1961. Therefore, appellant forfeited his credit in the Illinois Retirement System in 1961 as a matter of law.[11]

In conclusion we hold that the appellant exercised his option to purchase creditable

---

11. Since there is no double recovery in this case we need not decide whether the respondent has the statutory authority to prevent a double recovery. We note, however, that there is no specific statutory provision or mechanism directed to the prevention of a double recovery.

service under §§ 169.050(7) and (8) in 1955. The election was made within the statutory time limit. At the time of the election appellant was not receiving and was not eligible to receive retirement credit or benefits. Appellant satisfied the statutory service requirement in 1960, and the contribution requirements in 1961 when he made his last payment for the creditable service sought to be purchased. At the time of the final payment respondent had an absolute legal obligation to recognize and credit to appellant the creditable service purchased. When respondent's legal obligation became absolute in 1961, appellant automatically forfeited at least ten years of credit in the Illinois Retirement System. When appellant applied for retirement in 1976, respondent became legally obligated to pay benefits to the appellant based upon the creditable service purchased in 1961, plus the creditable service accumulated by appellant through his service in Missouri public schools.

The judgment of the trial court is reversed and remanded, and; the trial court shall enter judgment for the appellant consistent with this opinion ordering the respondent to pay appellant all benefits plus interest due and owing retroactive to July 1, 1976, plus all future benefits as they come due, based upon the creditable service purchased by appellant, provided that the appellant first repay to respondent the sums returned ($2,880.68) by respondent to appellant when the purchase was disallowed by respondent.

SMITH, P. J., and SATZ, J., concur.

Whether a double recovery should be prevented, and the method for doing so, are issues which should be resolved by the legislature.

Thus, the respondent's authority to act in this area is questionable.