In re the ESTATE OF Norine V. CANTONIA, Deceased, Harry O. Pirkey, Administrator, Plaintiff/Appellant,

v.

Charles D. SINDEL, Guardian of the Estate of George Edward Heitmeier, Defendant/Respondent.

No. 47892.

Missouri Court of Appeals, Eastern District, Division Two.

Jan. 8, 1985.

Bernard J. Cuddihee, St. Louis, for plaintiff/appellant.

Charles D. Sindel, Clayton, for defendant/respondent.

SIMON, Presiding Judge.

This is an appeal from a judgment of the Circuit Court of the City of St. Louis, Probate Division on a petition to discover assets. The probate court awarded proceeds from redeemed U.S. Savings Bonds, which had been registered in co-ownership form, to the surviving co-owners equal to their ownership in the bonds prior to redemption.

On appeal, Harry O. Pirkey (Pirkey), administrator of Norine V. Cantonia's (Norine) estate, raises the following points: (1) the trial court improperly applied the doctrine of equitable conversion; and (2) the trial court erred in failing to award all of the proceeds from the bonds to Norine's estate.

A cross appeal was filed by Charles D. Sindel (Sindel) as guardian of George Heitmeier's (George) estate in the event this court finds the Probate Court erred as contended by Pirkey on appeal. Sindel's sole point in the cross appeal is that the trial court erred in finding that Norine was sole owner of the U.S. Savings Bond or the proceeds therefrom because there was no evidence to support the finding and to do so is a misapplication of federal law. We affirm.

Since the record of this case is lengthy, we shall relate only the decisive facts. Norine and George lived together for a number of years. They handled their financial affairs together and it is undisputed that between July 1971 and June 1977 they became co-owners of numerous U.S. Savings Bonds, Series E, with a face value of fifty-two thousand one hundred dollars ($52,100). There is no evidence of the source of the funds used to purchase these bonds which were registered in the names of Norine or George.

Norine and her sister, Hazel Swanson (Hazel), also became co-owners on four (4) one thousand dollars ($1,000.00) bonds in July of 1971, and one (1) one thousand dollars ($1,000.00) bond in August of 1974. Similarly, these bonds were registered in the names of Norine or Hazel. Since Hazel testified to having no knowledge of the bonds, she was not the source of the funds used to purchase these bonds.

Norine and George suffered from health problems and began having difficulty managing their affairs in March of 1981. George's son, Edward Heitmeier (Edward), came to help them in April of 1981. Norine was hospitalized when Edward arrived but was released April 17, 1981.

George suffered a stroke early in May and was hospitalized. Sometime between May 1st and 15th, Edward was granted power of attorney over Norine's affairs. On May 15, 1981, while George was in the hospital, Edward accompanied Norine to Roosevelt Federal Savings and Loan so she could redeem the aforementioned bonds. A check payable to Norine V. Catonia and Roosevelt Federal for Sixty Two Thousand Six Hundred Ten Dollars and Thirty Two Cents ($62,610.32), representing the proceeds from the bonds, was issued.

That same day, Norine placed the bonds proceeds in a Forty-Five Thousand Dollars ($45,000) certificate of deposit (C.D.) and opened a NOW account with the balance of Seventeen Thousand Six Hundred Ten Dollars and Thirty-Two Cents ($17,610.32). Both the C.D. and the NOW account were registered in the names of Norine and Ed-ward as joint tenants with the right of survivorship. Shortly thereafter, Edward expended approximately $10,000.00 from the NOW account for his personal use leaving a balance of $7,082.10.

On June 25, 1981, Norine was declared incompetent and Pirkey was appointed her guardian. Upon Norine's death on August 8, 1981, Pirkey, as administrator, commenced a proceeding in the Probate Court for an inventory of Norine assets and discovered the balance of $7,082.10 in the NOW account. He transferred this amount to a separate estate account at Manufacturers Bank on August 10, 1981, but he was unaware of the existence of the C.D. at this time.

In October of 1981, Edward attempted to have both the C.D. and the NOW account transferred to Sindel, who had been appointed George's guardian in August of that year. Sindel was informed by an employee of Roosevelt Federal that only the C.D. existed because the NOW account had been closed upon the transfer of the balance to Pirkey. A new C.D. was issued in Sindel's name as guardian. On January 26, 1982, Edward assigned his interest to the proceeds which had been in the NOW account to Sindel as George's guardian.

Pirkey filed a petition for discovery of assets in the circuit court to obtain title to the C.D. Sindel counterclaimed and sought to recover the $7,082.10 withdrawn by Pirkey from the joint NOW account after Norine's death. Sindel's counterclaim sought title to the NOW account as assignee of Edward's interest in the proceeds. Roosevelt Federal interpleaded the certificate of deposit.

Following a hearing on July 6, 1982, the probate court made findings of facts based on the evidence presented. The pertinent findings of fact are provided:

(1) Norine was mentally incompetent on May 15, 1981.

(2) It was not the desire and intent of Norine that all of her United States Savings bonds be converted to cash and the proceeds transferred to joint accounts with

right of survivorship in the form of a C.D. and NOW account with Edward.

(3) Norine acted under the undue influence of Edward in redeeming her bonds.

(4) Norine was sole owner of the $62,610 proceeds from the bonds redeemed on May 15, 1981.

(5) Norine was competent at the time of the issuance of the bonds (between July, 71–June, 77).

(6) The court invoked the doctrine of equitable conversion, considering the bonds as remaining in registered condition of May 15, 1981, to effectuate the intention of Norine. Further, awarded to George and Hazel the following proportions of the C.D. and NOW account funds, which is identical to their percentage of ownership in the surrendered bonds:

George Heitmeier .8966% (approx. 90%)
Hazel L. Swanson .1034% (10%)

It was stipulated that the bond redemption proceeds were the source of the C.D. and the NOW account balance.

On November 22, 1982, George died and Edward was substituted as his personal representative in place of Sindel on August 25, 1983. Hazel was living at the time of the hearings.

Judgment was entered September 6, 1983 and was amended September 30, 1983.

■ On review, we must affirm the trial court's judgment if it is supported by substantial evidence, not against the weight of the evidence and the court correctly declared and applied the law. *Murphy v. Carron*, 536 S.W.2d 30 (Mo. banc 1976).

Pirkey contends the probate court erred in invoking equitable principles because: (1) the relief granted was not supported by the evidence; (2) no such relief was requested; (3) the remedy went beyond the relief requested; and (4) an adequate remedy at law existed.

■ Turning first to Pirkey's contention that the evidence did not support the application of equitable principles, we disagree. The probate court has both equitable and legal powers. § 472.030 RSMo (Supp. 1984). The evidence establishes that Norine was incompetent on May 15, 1981 and had been unduly influenced by Edward into redeeming savings bonds and subsequently into opening joint accounts in her name and Edward's. The law is well established that when unadjudicated incompetent contracts, the contract is not void, but voidable under equitable principles. See *Evans v. York*, 195 S.W.2d 902, 906[4] (Mo.App.1946). Thus, the probate court invoking its equitable powers restored the bond proceeds to the registered co-owners, who survived Norine.

■ As to Pirkey's arguments that equitable relief was not requested and furthermore that the relief granted went beyond the relief requested, we see no merit in these arguments. The plaintiff does not have to label the cause as one in equity when the relief and principles involved are clearly equitable. In equitable actions the probate court has the inherent power to adjust equity between the parties without rigid adherence to any determined form and may shape the remedy to meet the demands of justice. *Osterberger v. Hites Construction Co.*, 599 S.W.2d 221, 231[31, 32] (Mo.App.1980).

■ Contrary to Pirkey's argument that equitable relief was improper because an adequate remedy existed at law, it is established that when concurrent jurisdiction exists, i.e. law and equity, equitable principles can be invoked despite the existence of an adequate remedy at law. 27 Am.Jur.2d Equity § 89, p. 612.

Further, Pirkey maintains that even if equitable relief is appropriate under the facts of this case, the court improperly applied the doctrine of equitable conversion because this doctrine is usually applied to matters pertaining to probate estates involving the conversion of real property into personal property.

■ The doctrine of equitable conversion has been applied to situations not involving real property. The purpose of equitable conversion is to effectuate the intention of

the contracting parties. It is not a fixed rule of law but proceeds on equitable principles that take into account the result desired. 27 Am.Jur.2d Equitable Conversion § 1, p. 483.

In *Moran v. Sutter*, 360 Mo. 304, 228 S.W.2d 682, 687[7] (1950), our Supreme Court applied equitable conversion to hold a daughter's rights as cestui quie trust attached to the money from the sale of stock which had been held in trust, in lieu of the stock itself. Consequently, we find the probate court's application of equitable conversion is proper and Pirkey's point is meritless.

Having determined that the doctrine of equitable conversion is applicable, we will now address the issue of whether the probate court properly applied the doctrine to the facts.

The probate court awarded the bond proceeds to the surviving co-owners in proportions equal to their ownership in the bonds prior to Norine's redemption. Pirkey maintains that pursuant to regulations of U.S. Treasury Department Norine was the sole owner of the proceeds.

Pirkey relies on the United States Treasury Department, 31 C.F.R. § 315.37 (1983) which in part provides:

"A savings bond registered in co-ownership form will be paid to either co-owner upon surrender ... and upon proper payment ... the other co-owner will cease to have any interest in the bond. If both co-owners request payment ... the check will be drawn in the form, 'John A. Jones and Mary C. Jones.'"

Government regulations establish that the government's interest is contractual, i.e., to pay the owners an agreed amount upon proper presentation of the bonds. *Valentine v. St. Louis Union Trust Co.*, 250 S.W.2d 167, 169[1] (Mo.1952). The regulations pertain to the rights of co-owners in relation to the government at redemption not as to their rights between each other. Once the proceeds were paid, the government's interest in the matter ended.

The above regulation creates a joint tenancy with right of survivorship between the co-owners. *Valentine*, 169[1].

We have not been directed to, nor has our research revealed, a case concerning the disposition of funds received upon the surrender of U.S. savings bonds by one co-owner but since the co-owners are treated as joint tenants with the right of survivorship we look to our Supreme Court's holding in *Armbruster v. Armbruster*, 31 S.W.2d 28, 37[7–8] (Mo.1930). *Armbruster* is informative because it involves a similar form of joint tenancy created by statute, a joint savings account. In *Armbruster*, at 31, our Supreme Court applied the following rule:

"[T]he joint form of the account, either or the survivor to draw, of itself alone raises a presumption of fact, or inference, that the joint interest of the depositors follows funds withdrawn by either and negatives the idea that such withdrawals were severed from the joint estate and appropriated by the drawer to his own use. But the presumption is a weak one and readily yields to parol proof of the real intention of the parties. And while it makes a prima facie case for the party asserting the joint interest, the burden of proof is on him to establish his title by a preponderance of all the evidence."

Applying this rationale, we find Pirkey failed to overcome the presumption and the preponderance of the evidence clearly indicates that Norine did not intend to redeem the bonds and create a joint tenancy with Edward in a C.D. and a NOW account.

Pirkey, after Norine's death, has no authority to act in derogation of Norine's intent in the disposition of her interest. *Willman v. Phelps*, 631 S.W.2d 63, 66[4] (Mo.App.1982).

Thus, the probate court properly applied and declared the law and its findings have substantial evidentiary support.

Judgment affirmed.

STEWART and STEPHAN, JJ., concur.